THE KANSAS CITY ELEVATED RAILWAY COMPANY V. RACHEL SERVICE, a Minor, etc., et al.

No. 15,391. (94 Pac. 262.)

SYLLABUS BY THE COURT.

CONTRACTS—Attorney and Client—Compromise of Suit—Public Policy. An agreement between a client and his attorneys for the services of the latter in conducting a proposed lawsuit, wherein it is agreed that the client shall not settle, compromise or otherwise dispose of the cause of action without the written consent of the attorneys, is contrary to public policy and void.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. Opinion filed February 8, 1908. Reversed.

O. L. Miller, Samuel Maher, and Miller, Buchan & Miller, for plaintiff in error.

Bird & Pope, and J. L. Colvin, pro se.

The opinion of the court was delivered by

BENSON, J.: On November 13, 1905, Rachel Service, a girl under fourteen years of age, was injured by a car of the Kansas City Elevated Railway Company. James Service, her father, entered into an agreement with J. L. Colvin and Bird & Pope, attorneys of Kansas City, Mo., as follows:

"I hereby employ Bird, Pope & Colvin, attorneys, to

bring suit against the Metropolitan Street Railway and Kansas City Elevated Railway Company for damages, for injuries sustained by Rachel Service and myself, on or about the 13th day of November, 1905; and I hereby agree to pay said attorneys for their services an amount equal to forty per cent. of the amount received either by suit or compromise. I further agree not to settle, compromise or otherwise dispose of said cause of action without the written consent of said attorneys. It is further agreed that said attorneys shall not compromise or settle cause of action or any suit brought thereon without my consent.

"Dated this 13th day of November, 1905.

    (Signed)        JAMES SERVICE,
                    COLVIN, BIRD & POPE."

On November 16 these attorneys commenced an action in the court of common pleas for damages in behalf of the minor, by James Service, her next friend. On March 15, 1906, judgment was rendered in that action, by agreement between James Service, the father and next friend, and the attorneys for the defendant company, for $2000, which was duly paid, and an entry of satisfaction made upon the record. This judgment, and the satisfaction thereof, were entered without the knowledge of Messrs. Colvin and Bird & Pope, attorneys for the plaintiff, who had previously given notice of an attorneys' lien. Thereafter, on April 19, 1906, Colvin and Bird & Pope filed a motion to set aside the satisfaction of the judgment, and for an execution thereon for $800, their fee as claimed for their services in the action. Notice of this motion having been given, the railroad company filed various objections thereto, and the motion was heard upon the record and evidence and allowed, and an execution awarded for $800, to be issued upon the precipe of Messrs. Colvin and Bird & Pope. The railroad company excepted to this order and brings the case here.

The various assignments of error present but two questions: First, whether the attorneys prosecuting this claim are, under their contract of employment, entitled to the relief sought, and, second, whether they

have followed the proper procedure to obtain such relief.

Upon the first question it is insisted that the contract in question is void, as being opposed to public policy, because of the provision contained in it that no settlement or compromise of the claim should be made without the written consent of the attorneys employed under it. If the contention of the plaintiff in error that the contract is void be upheld, it will not be necessary to consider the minor question of practice discussed in the briefs. Provisions like the one now referred to have often been considered in connection with the subject of champerty, the two features being analogous and contained in the same agreement. The rule against champerty has its roots in public policy, which is opposed to the traffic in lawsuits and the promotion of litigation by intermeddlers for speculative purposes. This contract, however, is not champertous, for the attorneys, parties thereto, did not undertake to pay the costs and expenses of the litigation, which is an essential feature of champerty. (*Aultman v. Waddle,* 40 Kan. 195, 19 Pac. 730.)

The question, therefore, is whether the agreement that the action should not be compromised or settled without the consent of the attorneys makes the contract void. Greenhood, in his work on Public Policy, at page 474, gives the following rule on this subject: "A contract by which the control of the party in interest over litigation carried on in his behalf is limited is void." This rule rests upon the policy of the law which favors the settlement of disputes and regards with disapproval all schemes that tend to foment and prolong litigation in the interest of third parties. In *North Chic. St. R. R. Co. v. Ackley,* 171 Ill. 100, 49 N. E. 222, 44 L. R. A. 177, it was held that a contract with an attorney by which the control of the party in interest over litigation carried on in his name is attempted to be given over to the attorney, so that the interested party cannot settle the case without the co-

öperation of the attorney, is void.  In the opinion it was said:

"Whether a cause of action exists, and, if so, its nature and amount, are facts always involved in uncertainty, and a defendant has a right to buy his peace. The plaintiff has a right to compromise, and avoid the anxiety resulting from a cause pending to which he is a party.  Any contract whereby a client is prevented from settling or discontinuing his suit is void, as such agreement would foster and encourage litigation." (Page 113.)

This principle is applied in *Huber v. Johnson,* 68 Minn. 74, 70 N. W. 806, 64 Am. St. Rep. 456; *Boardman & Brown v. Thompson,* 25 Iowa, 487; *Weller & Lichtenstein v. Jersey City, &c., St. Ry. Co.,* 68 N. J. Eq. 659, 61 Atl. 459; *Davis v. Chase,* 159 Ind. 242, 64 N. E. 88, 853, 95 Am. St. Rep. 294; *Marshal Key v. C. Vattier,* 1 Ohio, 132; *Brown v. Ginn, Trustee,* 66 Ohio St. 316, 64 N. E. 123; *Stewart v. Welch,* 41 Ohio St. 483.

The opinion in *Potter v. Ajax. Mining Co.,* 22 Utah, 273, 67 Pac. 999, is referred to as opposing this view, but it was there said that the clause referred to was "against public policy, inoperative" (p. 291) and void. It was held, however, that the balance of the contract was not affected by it.  The case of *Kusterer v. The City of Beaver Dam,* 56 Wis. 471, 14 N. W. 617, 43 Am. Rep. 725, is also referred to in this connection, but we find nothing in the opinion sustaining the contention of the defendants in error.

This contract was obtained on the day after the injury occurred, before any effort for a settlement had been made.  It provided for a suit, which was commenced almost immediately, and it prohibited any settlement after its date without the written consent of the attorneys.  Thus the parties in interest were barred from any compromise, however desirable. Without such consent they must continue the litigation, with all its attendant hazards and expense.  Such a contract is obnoxious to public policy, whether viewed in the light of reason or authority, and, within the

principle of the authorities already referred to, is void.

This case is within the principles decided in *A. T. & S. F. Rld. Co. v. Johnson,* 29 Kan. 218. In that case it was held that the contract of the plaintiff with her attorneys was champertous and void and that a settlement between the defendant company and the plaintiff was valid, as against the claim of the plaintiff's attorneys under their agreement for an interest in the recovery, of which the company had notice, and the order of the district court setting aside the release of judgment and awarding execution to the extent of the attorneys' claim was reversed. It was further held that the release conferred upon the company the right, if it did not already have such right, to treat the contract between the plaintiff and her attorneys as void.

But it is argued that, even if the contract is void, the attorneys nevertheless had the right to recover the reasonable value of their services, and there are authorities which seem to sustain this view. This claim, however, was decided adversely to the defendants in error in *Moreland v. Devenney,* 72 Kan. 471, 83 Pac. 1097, where it was held that the preliminary oral negotiations were merged in the written agreement, and that there could be no recovery upon *quantum meruit* for the services rendered under the illegal agreement. The court said:

"The services were rendered under an agreement which was void, not because of a mere want of power to make it, but because it was against public policy; and in such a case it is held that no recovery can be had upon the contract or for the value of the services rendered under it. (*Bowman v. Phillips,* 41 Kan. 364, 21 Pac. 230, 3 L. R. A. 631, 13 Am. St. Rep. 292.)" (Page 474.)

Other objections are made to this agreement: that it does not purport to bind the minor, but only her father; and that the father had no authority to bind her to pay any specific amount. In view of the fact that the agreement is void for the reasons already stated it is not necessary to consider these matters.

The question of practice was referred to but left undecided in *A. T. & S. F. Rld. Co. v. Johnson,* 29 Kan. 218. Since then, however, the legislature has provided a procedure to enforce an attorney's lien by motion, which was followed in this case. (Laws 1903, ch. 65.)

Other minor questions are discussed, but need not be considered. Holding that the contract in question is void, the order brought here for review is reversed.