MAY L. MORAN, Plaintiff and Appellant, and R. H. JOHNSON, W. F. Burnett, and F. H. Register, Interveners and Appellants, v. L. A. SIMPSON, T. D. Casey, et al., Defendants and Respondents.

(173 N. W. 769.)

**Attorney and client — contract for attorneys' fees — public policy.**

1. A certain written contract for attorneys' fees between the defendants, attorneys at law, and the plaintiff, examined and *held* to be against public policy.

**Attorney and client — contract of employment — validity.**

2. The contract for attorneys' fees prohibited the plaintiff from entering into any negotiations for the purpose of arriving at a compromise, adjustment, or settlement with certain parties with whom she was about to have litigation concerning certain property which was claimed by the plaintiff, and, adversely to her, claimed by those against whom the litigation was to be instituted, without her first having obtained thereto the written consent and approval of the defendants, her attorneys. *Held*, that such stipulation in the contract is against public policy, and is for that reason void. This being true, it made void the further provision in the contract which stipulated the amount of fees which defendants were to have received for services to be rendered by them to plaintiff under the terms of such contract.

**Attorney and client — conveying property by client to attorney for fees — confidential relations.**

3. Plaintiff, at the solicitation of defendants, having given a deed to the defendants for one half of certain real property and an assignment of certain property which defendants claimed they were entitled to in payment of certain attorneys' fees, said deed and assignment having been procured from the plaintiff without the defendants, at the time of the procuring of the same, having explained to the plaintiff the terms of the contract of employment, and without them telling her that she was not required by the terms of the contract to give such deed and assignment, and without having fully and fairly as her attorneys advised or explained to plaintiff her rights, powers, and privileges in such matter; it is *held* that, by reason of the confidential relation existing between defendants and plaintiff at the time of the execution of the deed and assignment and the failure of the defendants to properly advise, direct, and counsel plaintiff in all the matters above stated, the deed and assignment are wholly void.

**Attorney and client — conflicting interest in property — confidential relations.**

4. Where defendants were employed by plaintiff as her attorneys to procure for her and protect an interest in certain real and personal property also claimed by other parties against whom plaintiff was about to institute litigation, and which litigation was instituted, and wherein plaintiff's right to the property was being vigorously resisted and contested by various other claimants thereto, and the defendants during the time of such litigation by deed and assignment from plaintiff acquired an interest therein,—it is *held* that such interest so acquired by defendants·was adverse and antagonistic to the interest of plaintiff, and a deed and assignment from plaintiff to defendants of such interest are *held* void as being procured in violation of a confidential relation then existing between defendants and plaintiff.

**Work and labor — recovery on quantum meruit — invalid contract.**

5. Where a written contract for attorneys' fees is void, services rendered by attorneys thereunder usually may be recovered in an action on *quantum meruit*.

Opinion filed June 2, 1919.    Rehearing denied July 29, 1919.

On appeal from Stark County District Court, Honorable *Charles M. Cooley*, Judge.

Reversed.

*J. P. Cain, W. F. Burnett*, and *Engerud, Divet, Holt, & Frame*, for appellants.

Owing to the confidential and fiduciary relations between an attorney and his client and to the influence of the attorney over his client growing out of that relation, courts of law, and especially of equity, scrutinize most closely all transactions between an attorney and his client. 4 Cyc. 960; 2 R. C. L. §§ 42, 43; 6 C. J. p. 737, § 311; 1 Perry, Trusts; 2 Pom. Eq. Jur. § 960; Thornton, Attys. at Law, 744; Felton v. LeBreton (Cal.) 28 Pac. 490; Elmore v. Johnson (Ill.) 32 N. E. 443, 36 Am. St. Rep. 401, 21 L.R.A. 366; Willin v. Burdette (Ill.) 49 N. E. 1000; Shirk v. Neible (Ind.) 83 Am. St. Rep. 159, 59 N. E. 281; Thomas v. Turner (Va.) 12 S. E. 149; Dickinson v. Bradford (Ala.) 31 Am. Rep. 23.

When two parties stand toward each other in any relation which necessarily induces one to put confidence in the other and gives to the latter the influence which naturally grows out of such confidence, and a sale is made by the former to the latter, equity raises a presumption

against the validity of the transaction. To sustain it the buyer must show affirmatively that the transaction was conducted in perfect good faith without pressure of influence on his part, and with complete knowledge of the situation and circumstances and entire freedom of action on the part of the seller. Dunn v. Dunn (N. J.) 7 Atl. 842; Condit v. Blackwell, 22 N. J. Eq. 481; Porter v. Woodruff, 36 N. J. Eq. 174; Farmer v. Farmer, 39 N. J. Eq. 211; Cleine v. Englehart (N. J.) 5 Atl. 718; Hill v. Hall (Mass.) 77 N. E. 831; Burnham v. Heselton (Me.) 20 Atl. 80; Pom. Eq. Jur. §§ 955–957; Adams, Eq. § 61, and notes; Story, Eq. Jur. § 310; Egan v. Burnright (S. D.) 149 N. W. 176; Woodcock v. Barrick (W Va.) 91 S. E. 396.

A contract between attorney and client which deprives the client absolutely of any control of her interest of the proceedings to protect or enforce them, and vests that power and control absolutely and irrevocably in her attorneys, is contrary to public policy and void. Greenleaf v. Ry. Co. 30 N. D. 112; Longue v. DeJain (La.) 56 So. 427, 38 L.R.A.(N.S.) 389; Scheinesohn v. Lemonek (Ohio) 95 N. E. 913; Bartlett v. Odd Fellows Sav. Bank (Cal.) 21 Pac. 743; Price v. Western Loan & Sav. Co. 19 Ann. Cas. 589, and note; Gibson v. Chicago R. Co. (Iowa) 98 N. W. 474; Schouweiler v. Allen, 17 N. D. 510; 4 Cyc. 954 and cases cited; Polsley v. Anderson, 7 W. Va. 202. 23 Am. Rep. 613.

In every contract where the attorney agrees to give his services based on a contingent fee, notwithstanding any expressed stipulation to the contrary, the client has the right to terminate the employment before the completion of the litigation only for the reasonable value of the attorney's services. Scheinesohn v. Lemonek (Ohio) 95 N. E. 913; Bartlett v. Odd Fellows Sav. Bank (Cal.) 21 Pac. 743; Price v. Western Loan & Sav. Co. 19 Ann. Cas. 589, and note; Gibson v. Chicago R. Co. (Iowa) 98 N. W. 474; Schouweiler v. Allen, 17 N. D. 510; 4 Cyc. 954 and cases cited; Polsley v. Anderson, 7 W. Va. 202, 23 Am. Rep. 613.

*T. F. Murtha, L. A. Simpson,* and *T. D. Casey,* for respondents.

Any person may before the trial intervene in an action or proceeding, who has an interest in the matter in litigation or in the success of either party, or an interest against both. Comp. Laws 1913, §§ 7413, 7789; Bray v. Booker, 6 N. D. 526, 72 N. W. 933; Horn v. Volcono

Water Co. 13 Cal. 62, 73 Am. Dec. 569; 6 C. J. 719, § 283; Green-leaf v. Ry. 30 N. D. 112.

The common-law rule in regard to contracts between attorney and client is abrogated in this state, and attorney and client may lawfully make contracts fixing the attorney's compensation. Comp. Laws 1913, § 7789; 6 C. J. 719, § 283.

Contingent fees are lawful in this state. Greenleaf v. Ry. 30 N. D. 112.

A contingent fee of 50 per cent is not unconscionable. 6 C. J. 740, § 316, 741, note 10; Dreiband v. Candler (Mich.) 131 N. W. 129; Re Fitzsimons (N. Y.) 66 N. E. 554; Taylor v. Bemiss, 110 U. S. 42, 28 L. ed. 64.

The defendants were not the attorneys for plaintiff until the contract of May 9th was signed, and in making such contract the plaintiff dealt with the defendants at arm's length. 2 R. C. L. 1036, § 120; 6 C. J. 735, § 309; 1 Story, Eq. Jur. 13th ed. §§ 310-313; Elder v. Frazier (Iowa) 156 N. W. 182; Dockert v. McLellan (Wis.) 67 N. W. 733; Clifford v. Braun, 71 App. Div. 432, 75 N. Y. Supp. 856; 6 C. J. 688, § 212, notes 35 and 37.

The cancelation of an executed contract is an exertion of the most extraordinary power of the court of equity, which ought not to be exercised except in a clear case and on strong and convincing evidence. 9 C. J. 1254, § 195; Lovell v. McCanghey (S. D.) 66 N. W. 1085; McKillip v. Bank, 29 N. D. 541, 151 N W. 287; Schmidt v. Curtiss (Wash.) 130 Pac. 89.

Where parties employ an attorney, paying a certain amount as retainer only, and there is no fraud in the making of the contract, the attorney on being discharged and other attorneys substituted will not be required to return the retainer. Moyer v. Cantiney (Minn.) 42 N. W. 1060; See 5 Century Dig. Attorney & Client, p. 1786; Kersey v. Garton, 77 Mo. 645; 5 Ky. L. Rep. 2, 16 Cent. L. J. 472; Webb v. Trescony, 76 Cal. 621, 18 Pac. 796.

Where an attorney is employed to defend a suit and is discharged without cause, the measure of his damages is the compensation named in the contract. Kersey v. Garton, 77 Mo. 645; 5 Ky. L. Rep. 2; 16 Cent. L. J. 472; Webb v. Trescony, 76 Cal. 621, 18 Pac. 796.

For other cases in point under circumstances somewhat similar to

the case at bar, transactions between the attorneys and client were upheld. Ah Foe v. Bennett (Or.) 58 Pac. 508; Donohoe v. Chicago Cricket Club (Ill.) 52 N. E. 351; Bartlett v. Odd Fellows Sav. Bank (Cal.) 21 Pac. 743; Bingham v. Salene (Or.) 14 Pac. 523; Lewis v. Helm (Colo.) 90 Pac. 97; Kidd v. Williams (Ala.) 56 L.R.A. 879; Meyers v. Luzerne Co. 124 Fed. 436; Hamilton v. Holmes (Or.) 87 Pac. 154; Ringen v. Ranes (Ill.) 104 N. E. 1023; Garceau v. Arcand (Minn.) 145 N. W. 809; Vanasse v. Reid (Mich.) 87 N. W. 192; Lindt v. Linder, 90 N. W. 596; Day v. Wright (Ill.) 84 N. E. 226; Mitchel v. Colby (Iowa) 63 N. W 769; Morrison v. Smith (Ill.) 23 N. E. 241; 2 R. C. L. p. 96, § 43, note 17.

Ordinarily, where the clients convey to the attorney an interest in the cause of action and the lawful effect of the contract is to confer a power coupled with an interest, the contract is not revocable at will. Larned v. Dubuque (Iowa) 53 N. W. 105; Gray v. Bemiss (Minn.) 151 N. W. 135; Re Haynes, 12 N. E 60; 38 L.R.A. (N.S.) 390; 2 C. J. 531; Bird v. Phillips, 87 N. W. 414; Marziou v. Pioche, 8 Cal. 536, 38 L.R.A. (N.S.) 390; Gulf, C. & S. F. R. Co v. Miller, 21 Tex. Civ. App. 609; 53 S. W. 709. See also People ex rel. Downer v. Norton, 16 Cal. 436.

GRACE J. Appeal from the district court of Stark county, Chas M. Cooley, Judge.

This action is one to set aside and cancel a deed to certain lands, and a certain assignment to certain lands, and personal property, and to reform a certain note and mortgage. The material facts in the case are as follows:

James H. Caldwell and Laura E. Caldwell, his wife, were murdered by their hired man in Stark county, North Dakota, on April 30, 1917. James H. Caldwell died testate, seised of certain real estate which consisted of approximately 4,100 acres of land in Stark county, 225 head of cattle, and, in addition to this, some horses, farm machinery, and furniture. The estate was appraised at $60,000; it was encumbered for approximately $10,000. The property was all in Mr. Caldwell's name. He had two children only,—a daughter, May L. Moran, the plaintiff, and a son, Jay Allen Caldwell, who, it is conceded, disappeared in October, 1907, and who has never since been heard from.

It does not appear from the record in this case whether Mr. or Mrs. Caldwell died first. It is a matter which is not material in this controversy, except it may have an indirect bearing upon one of the questions presented to which we will later refer. Mrs. Caldwell died intestate, leaving an adult son, Albert Mark Smith, who was her only heir, he being her son by a prior marriage to that with Mr. Caldwell. The will of Mr. Caldwell was dated the 4th day of April, 1916. In it he bequeathed to his wife for the term of her natural life the homestead, the northeast quarter (N.E.¼) of section 8, township 138, range 93, together with the income and profits therefrom. He further bequeathed her the sum of $15,000, which was to be realized from the sale of personal property or real estate. In addition to this, he bequeathed to her all the horses and machinery and furniture. He bequeathed to Deborah Lovewell, his sister of Chicago, Illinois, the sum of $1,000 and also a contingent interest in other property to which we will later refer; to his sister Julia H. Tennis, of Chicago, the sum of $1,000. All the residue of the estate, real, personal, and mixed, he devised and bequeathed to R. H. Johnson and W. F. Burnett, of Dickinson, North Dakota, and F. H. Register, of Bismarck, in trust for J. Allen Caldwell. The will further provided that if J. Allen Caldwell did not within twenty-five years appear to claim his interest, then the residue of the estate should be taken by Deborah Lovewell. He also appointed the same parties who were by the will designated trustees, or survivor, or survivors of them, as the executors of his will, and named them as such therein. The trustees were empowered to hold the property in question, manage and care for the same, to contract for the sale of and to sell and dispose of any and all of the real estate and personal property. A like power was conferred upon the trustees as upon executors.

May L. Moran, desiring to contest the will, first employed as her attorneys the firm of Casey & Burgeson, of Dickinson, North Dakota, and entered into a contract in writing with them, which she duly executed, and which was, on behalf of the firm of Casey & Burgeson, signed with the firm name by T. D. Casey. Mr. Burgeson refused, however, to have anything to do with the case, and is not a proper party to the action. This contract is exhibit "G," and is as follows:

Whereas, the estate of James H. Caldwell is about to be probated, and I, the undersigned, Mae Moran, daughter of said James H. Caldwell, wish to have my interests looked after and taken care of.

Therefore, Casey & Burgeson are hereby retained by me to look after my interests in said matter, and, providing a contest of the will of said James H. Caldwell is decided upon, then and in that case said Casey & Burgeson are to receive as fees for their services . . . amount, the same to be equal to . . . per cent of the value of the estate obtained by me through such contest. That unless such contest is decided upon by us, and other disposition is made, under the provisions of the will, then Casey & Burgeson are to receive such fee from me as will be reasonable and hereinafter decided upon.

That I am destitute and without funds and cannot provide funds for said contest or for any purpose, therefore this agreement is made with Casey & Burgeson.

Dated at Dickinson, N. D., this 4th day of May, 1917.

Mrs. Mae Moran.

Witness:

A. M. Fay.

We and each of us hereby accept the terms of the above arrangements.

Dated this 4th day of May, 1917.

Casey & Burgeson,
By T. D. Casey.

Subsequent to the execution of this contract and on May 9, 1917, the plaintiff entered into another contract with Leslie A. Simpson and Tobias D. Casey, being the same Mr. Casey who is a member of the firm of Casey & Burgeson. This contract is exhibit "A" and is as follows:

This agreement, made this 9th day of May, 1917, between May L. Moran of Dickinson, N. D., daughter and heir at law of James H. Caldwell, deceased, and legatee under the purported will of James H. Caldwell, deceased, party of the first part, and Tobias D. Casey and L. A. Simpson, attorneys, of Dickinson, N. D., parties of the second part, witnesseth:

The party of the first part desires to contest the will of James H.

Caldwell, deceased, and to institute legal or other proceedings to acquire for herself her rightful share of her father's estate, and she is without funds to carry on such contest; to that end she hereby retains and employs the parties of the second part as her attorney irrevocably to take charge of all matters in connection with the said estate for and in her behalf, and to conduct such proceedings in said court or such other court as the case may be removed to, to protect her interest in said estate.

The party of the first part agrees upon her part that she will not enter into or conduct any negotiations of any kind or character with the executors of said estate, the above-named petitioners, or with any other person, looking to a settlement, adjustment, or compromise of her interest connected with the said estate, save and except the parties of the second part, and that she will, in all things connected with any litigation growing out of it or any efforts at settlement or compromise, consult with and be guided exclusively by the advice of the parties of the second part, and will make no settlement of any kind or character in connection therewith without first having obtained the written consent and approval of the parties of the second part. And the party of the first part, in consideration of the employment and retainer aforesaid, hereby agrees to allow an expense account to the parties of the second part in a sum not to exceed $3,000, exclusive of the compensation and commissions to be paid to the parties of the second part as hereinafter stated.

In consideration of the parties of the second part accepting such employment and undertaking to protect and enforce the interests of the party of the first part in said estate, in addition to the expense account hereinbefore mentioned, the party of the first part agrees to pay to said second parties a sum equal to 50 per cent of the amount realized by the said May L. Moran from said estate whether the same be realized by adjustment, compromise, litigation, or in any other manner whatever.

In consideration of the things hereinbefore mentioned the parties of the second part accept such retainer, and agree and undertake to protect the rights of the party of the first part in and to said estate, and to do all things in their judgment whatsoever requisite and necessary, and to that end full power and authority by the party of the first part is given to the parties of the second part to adjust, settle, or com-

promise the interests of the party of the first part in said estate, but no final settlement shall be made and consummated by the parties of the second part without first submitting the offer, compromise, or adjustment to the party of the first part.

In witness whereof said parties have hereunto set their hands and seals the day and date first above written.

May L. Moran,

Tobias D. Casey,

L. A. Simpson.

On the 5th day of May, 1917, the executors presented the will for probate to the county court of Stark county, and also petitioned to be appointed as special administrators therein. The defendants Simpson and Casey, on the 18th day of June, 1917, as attorneys for plaintiff, filed a contest against the probate of the will, alleging incapacity of James H. Caldwell to make said will by reason of alcoholic insanity and upon other grounds. The hearing of the proof of will was to have occurred on the 21st day of June, 1917. The defendants Simpson and Casey, after their retainer, had done considerable work in preparation for the contest of the will and were to more or less expense, all of which facts appear more fully from the evidence.

Just prior to the date upon which the contest of the will was to have been heard, it seems to have been decided upon by plaintiff and her attorneys to purchase the interest of Deborah Lovewell in the estate which was bequeathed to her, as we have above stated. The executors named in the will and W. F. Burnett, their attorney, were consulted in this regard. The hearing of the proof of will was continued to the 15th day of October, 1917. On the 9th day of August, 1917, W. F. Burnett, one of the executors and trustees named in the will, was sent to Chicago by Simpson, Casey, and May L. Moran with the consent of the executors to determine whether said Deborah Lovewell's interest could be purchased for May L. Moran. On the 22d day of August, 1917, S. E. Thompson of Chicago, Deborah Lovewell's attorney, came to Dickinson, North Dakota, and the sale of Deborah Lovewell's interest was finally consummated. It was purchased by the plaintiff in this action for the sum of $7,500. The money to pay for the interest of Deborah Lovewell was furnished by the firm of Simpson & Casey.

It also appears that the defendants were making some effort to purchase the interest of the heir of Laura E. Caldwell, which is shown by the bequest in the will, that interviews were had with the executors and Pugh & Thress, attorneys for Albert Mark Smith, with a view to buying the interest for May L. Moran. This purchase was never consummated by the defendants, but was later made by May L. Moran and the executors for the sum of $12,500.

The defendants claim that in pursuance of the contract exhibit "A", and with the understanding and consent of May L. Moran, and during the negotiations for the purchase of the interests of Deborah Lovewell and Albert Mark Smith, that the plaintiff agreed with Simpson & Casey that if they would purchase the interest of Deborah Lovewell and pay for the same, she would immediately by deed and assignment convey them an undivided interest in all the property she would receive from her father's estate, whether the same be by suit, purchase, compromise, settlement, or any other manner, and whether the said interest be real, personal, or mixed property; and that she at that time agreed to give them a note and mortgage upon the real estate that she might obtain from the estate as security for the money advanced by defendants to purchase the interest of Deborah Lovewell and Albert Mark Smith in the estate.

On the 28th day of August, 1917, May L. Moran made, executed, and delivered a deed to one-half interest in all of her interest to the real estate belonging to the estate of her father, and on the same date made an assignment of one-half interest of all the property of the estate of every kind and description that she would then or thereafter obtain from her father's estate. The deed was acknowledged on the 4th and the assignment on the 5th day of September, 1917. The deed was recorded in the register of deed's office, Stark county, on September 24th, at 2:55 o'clock P. M. The mortgage for $12,500 was dated September 4, 1917, and recorded September 24, 1917, at 3:10 o'clock P. M.

It is claimed by the defendants that the deed of one-half interest in the land therein described, and the assignment which purports to transfer the one-half interest in the land and certain personal property, were executed and delivered to them in pursuance of the terms of the contract of May 9, 1917. It is conceded by the defendants that the mortgage for $12,000 should be reformed and reduced to $7,500, and

when so reformed should be a lien upon the land. It may also be conceded that the defendants have rendered a considerable amount of professional service to the plaintiff.

We think the foregoing covers all the material facts in the case, and we may now proceed to consider the relative rights of the parties to the litigation. The two contracts have been set forth herein for the reason there is considerable authority to show that after an attorney has once entered into a contract with his client, and is retained by the client and the compensation for his professional services is agreed upon, that thereafter such compensation cannot be changed by agreement between the attorney and the client, nor increased by the making of a subsequent contract with reference thereto. Whatever may be the rule in other states, we are satisfied that this rule does not apply in this state. We have a statute which treats of the right and power of an attorney in making a contract. It is § 7789, Compiled Laws 1918, which so far as material to this case, reads thus: "The amount of fees of attorneys, solicitors, and counsel in civil and criminal actions, must be left to the agreement, express or implied, of the parties." The language of this statute is plain and cannot be misunderstood. It confers upon the attorney the right to make a contract with his client upon such terms as he and the client may finally agree. The attorney and the client having a right to make the contract, it must follow they have a right to change the terms of the contract by mutual agreement or the right to entirely abrogate the first contract and make a new contract.

It is claimed by the appellant that the trial court erred in its findings of fact and conclusion of law predicated thereon, in determining therein that the executors had no interest in this action and were not properly interveners, and that their complaint should be dismissed. That the trial court is in error in this regard, there can be no doubt. The interveners were the executors of the will. As such, for the purpose of administration, the title of all the property vested in them. They were thus accountable as a matter of law for all property which came into their hands or under their control, and were answerable and could be held to account fully for the same to anyone who was entitled to receive any of such property. If the trust created by the terms of the will was invalid as being contrary to the laws of this state, the executors nevertheless would be vested with control and be in charge of the

property until such time as it was legally and properly distributed to those who were finally determined by the court to be entitled to it. The position of an executor or administrator is a trust of the highest character. They are held to strict accountability for all property, money, or effects that may come into their hands or under their control by virtue of such relation. See McFadden v. Jenkins, 40 N. D. 422, 169 N. W. 151. Truly, then, the executors had a very material interest in the result of this action. This being true, they were not only proper, but necessary, parties, and their complaint in intervention should not have been dismissed, and it was reversible error so to do.

Appellant has also assigned as error the conclusion of law by the trial court, which is as follows: "That the contract of May 9, 1917, as well as the assignment and deed described in the amended complaint, are valid and binding instruments, and are not null and void nor inequitable nor unconscionable, but the interest thus conveyed to defendants under said assignment and deed is, and equitably should be, impressed with a lien in favor of the said May L. Moran, as security for the payment by defendants to her of such sum, if any, as she may be required to pay on the note, exhibit 'C,' or any other sum or sums which have been or may be expended by her pursuant to the contract, exhibit 'A,' in excess of her proper one half thereof, and the judgment to be entered herein will decree such lien accordingly."

In connection with this assignment of error may be considered a further one, viz., that it was error to dismiss the complaint of the plaintiff, and under these two assignments of error may be included the discussion, if any, relative to any other assignments of error. The appellant at the very conclusion of the brief uses the following language: "This, of course, leaves the retainer contract, exhibit 'A,' stand for what it is worth. Its validity, or Messrs. Simpson & Casey's rights under it against Mrs. Moran, are not the issue in this action." In this the appellants are entirely mistaken, for one of the main issues raised by the pleadings, and which is pleaded in the complaint and answer, is the validity of exhibit "A," and the validity of the deed and assignment. The defendants and respondents in their brief use the following language: "In conclusion we desire to direct the court's attention to counsel's emphatic statement at the commencement of their brief, and which statement is reiterated throughout such brief to the

fact that the validity of the contract of May 9th is not here in question. Such attitude of counsel is, in view of the testimony, commendable, but the statement by them on page 126 of their brief, that the assignment, exhibit 'B,' the deed, exhibit 'D,' the note for $12,000, exhibit 'C,' and the mortgage securing same, are the only instruments attacked by the complaint, and the only instruments against which relief is sought, is manifestly not true, as a glance over the complaint will clearly disclose. In paragraph 12 of the complaint they expressly challenge the validity of such contract, alleging that the same was and is unconscionable and exorbitant, and that said several instruments and assignments (which include the contract of May 9th) were and are unequitable and void and without consideration, except as therein stated and in fraud of her rights, etc."

In the defendants' answer, the following allegation is contained:

"That the plaintiff, May L. Moran, wished to contest the said will of said James H. Caldwell, but, being absolutely without means, she was unable to secure counsel to conduct a contest or any litigation that might be necessary, or to take any other steps to protect her rights in the estate, unless such counsel could be procured upon a contingent basis, as plaintiff, May L. Moran, informed these answering defendants when she solicited these defendants to appear for and to represent her in said estate.

"That on the 9th day of May, 1917, said May L. Moran, one of the above plaintiffs, entered into a written contract with the answering defendants, attorneys at law, residing at Dickinson, Stark county, North Dakota, to represent her in all litigation, settlement, or compromise, of every kind and description growing out of her claim to the property left by James H. Caldwell, at his death, and said attorneys were to receive for such services a contingent fee of fifty per cent (50 per cent) of all of the property of whatever kind obtained by said May L. Moran out of the estate of her father, James H. Caldwell, deceased, and, in addition thereto, an expense account not exceeding three thousand dollars ($3,000).

"That thereafter and in pursuance of such written employment, the answering defendants served upon W. F. Burnett, Esq., attorney for the executors and trustees named in the will, and upon said executors personally, a notice of retainer and appearance in said case,

which notice of retainer and appearance bore date May 10, 1917, and said answering defendants ever since said time have been and now are acting as the attorneys for said May L. Moran."

The issue, then, is the validity of the instruments above mentioned, and it clearly appears to be such from the pleadings. The contract of May 9th is an issue in the case. Its terms, validity, effect, was, on oral argument, thoroughly analyzed by the attorneys of both appellant and respondent. Defendants' claim of right to recovery in this action is based largely upon the terms of the contract. If that contract is invalid, the deed and assignment have no standing in this action, and are of no effect, and are void, and, should that contract be determined to be a valid one, the deed and assignment, for reasons which we shall state, might, nevertheless, be void. Assuming for the present that the contract of May 9th is valid, we are convinced the deed and assignment, so far as the contract is concerned, are void and should be canceled of record.

The 50 per cent clause in the contract means 50 per cent of the amount of money which May Moran should finally receive from the state, and not 50 per cent of the property, either real or personal, which might be recovered in her action against estate. Giving such words their usual and commonly understood signification, no other reasonable conclusion can be reached. Under the 50 per cent clause in the contract, the defendants had no right, and were not entitled, to a transfer to them of one half of the real and personal property. Such transfer was not in accordance with the terms of the contract, and, considering all the facts and circumstances under which it was executed and the confidential relations of the parties, it was voidable by the plaintiff at any time so far as the defendants were concerned.

If a transfer such as this from the plaintiff to her attorney, of property in litigation based upon the 50 per cent clause in the contract, could in any event be valid, it could only be where there is clear proof that the plaintiff prior to, and at the time of, the transfer, fully understood the nature and the meaning of the entire contract, exhibit "A," and upon further clear proof that the defendants in this action, her attorneys, had fully and fairly explained the whole of the contract and its legal meaning and effect to her. It would have to appear from competent and clear testimony that she made such transfer knowingly;

that it was one warranted or required under the terms of the contract; and that she at that time knew and understood that the defendants were entitled only to 50 per cent in money of whatever was recovered from the estate; and that she further knew that the defendants were not entitled under the contract as a matter of right to receive a deed to 50 per cent or one half of the land and assignment to one half the personal property. It was incumbent upon the defendants to explain fully and fairly to the plaintiff all these matters and terms of the contract, exhibit "A," before she executed the deed and the assignment. They could not draw up a contract providing for such transfer, and hand it to plaintiff or read it to her, and let her draw her own conclusions as to what its meaning was. They were bound in good faith to explain every term of the contract and the full meaning thereof to her. They were further bound to advise her of the legal consequences of the making of such transfer; that is, they were bound to inform her that under such transfer they would have a legal right in all the property equal to that of plaintiff; that they would have a legal right to object to a settlement about to be made or an equal right with plaintiff to make settlement with any other claimants to the estate, and this though it conflicted with plaintiff's wishes, desires, or interests therein; that under such transfer they would become tenants in common with her, etc.

The relation between defendants and the plaintiff was one of trust; it was a confidential relation. There is no proper showing in this record that the defendants so advised the plaintiff, nor that they fully and fairly explained to her the full legal effect of all the contracts executed by her, including exhibit "A," before procuring the transfers in question from her. They appear to have taken a negative position. They appear to have proceeded upon the theory that it was the plaintiff's duty to depend upon her own intelligence exclusively as to the meaning of the terms of all the contracts, and as to the defendants' rights thereunder, and their right, if any, with reference to the transfer of the property in question; and that she had no right to expect and that they were not bound to advise or direct her in arriving at the proper understanding with reference thereto; in other words, they assumed toward plaintiff a kind of *laissez faire,* or *caveat emptor* atti-

tude. Such is not the proper attitude in law nor otherwise for attorneys to assume toward their clients.

· It is clear from what we have said in this regard that the transfer was voidable, not only for the failure of the defendants to properly advise the plaintiff of all her rights under the contract and in law with reference to the transfer, but that the transfer is also, under all the circumstances and the misapprehension of fact and law under which we think the record fairly shows it was executed, voidable as being in conflict with the expressed terms of the contract.

The contract of May 9th is not valid, but wholly void; it is one against public policy. It provides in substance that the plaintiff shall not enter into or conduct any negotiations of any kind or character with the executors of said estate, or with any other person looking to settlement, adjustment, or compromise of her interest connected with the estate, save and except the parties of the second part, and that she will, in all things connected with any litigation growing out of it or in any efforts at settlement or compromise, consult with and be guided only by the advice of the defendants, and that she will make no settlement of any kind or character in connection therewith without first having obtained the written consent and approval of the defendants. That such provision of the contract is void and absolutely against public policy, there is not the least doubt. This being true, it makes void that provision of the contract which provides for the payment to the defendants of the 50 per cent of the amount realized from the estate by the plaintiff. Snyder v. De Forest Wireless Teleg. Co. 14 L.R.A.(N.S.) 1101 and note therein cited (190 N. Y. 66, 123 Am. St. Rep. 533, 82 N. E. 742, 13 Ann. Cas. 441; Kansas City Elev. R. Co. v. Service, 77 Kan. 316, 14 L.R.A.(N.S.) 1105, 94 Pac. 262. The contract being void in this respect, there is nothing to do but to hold the deed and assignment void, and it is so held.

There is another reason why the deed and assignment are void, and that is, the defendants as attorney for the plaintiff could acquire no interest in the subject-matter of the action which would be adverse or antagonistic to her interest at the time they received deed and assignment of one half of the land and an assignment of one-half interest in the personal property mentioned in the assignment. As soon as they received the deed and assignment, if the same were valid, they became

part owners of the property. There were others than plaintiff who claimed an interest in the estate with whom settlement had not been made. Plaintiff might want to make settlement with them for a different sum of money than what defendants would be willing to pay. If this were true, their interests would be adverse and antagonistic to plaintiff's. If the plaintiff desired to litigate with others who claimed an interest in the estate, and defendants wanted to settle with such other claimants, the interests of plaintiff and defendant in such circumstances would be adverse, antagonistic, and conflicting, and the same would be true if defendants desired to litigate with other claimants to the estate than plaintiff, and plaintiff desired to settle with them. If, after the defendants received a deed to one-half interest in the land and assignment to one half of the personal property, the plaintiff desired to litigate the other claimants and defendant desired to settle with them, or *vice versa,* in what position would defendants be to actually and in good faith as attorneys represent plaintiff's interest? It is not difficult to see in such circumstances, the defendants would be so placed that they could not in good faith represent the plaintiff and defendant and protect her interests. That this condition did, to some extent, arise in this case, is beyond dispute. The defendants thought the interests of Smith would be bought for approximately $4,000; the testimony shows they were trying to buy it for about this amount; the plaintiff, however, agreed to pay $12,500 for it. It is not difficult to see, under these circumstances, that the interest of plaintiff and defendants in the land and personal property would be adverse, antagonistic, and conflicting.

1 Perry on Trusts, § 202, in part reads as follows: "When an attorney deals directly with his client, either in purchasing from him or in selling to him, as well as in making contracts with him during the time of his employment as attorney, such dealing will be carefully scrutinized by the court to make sure that the consent of the client was freely given, and that no material matters of fact or of law were concealed from him."

The settlement of the estate produced much litigation. Under all these circumstances, we cannot come to any other conclusion than that the defendants placed themselves in an adverse, antagonistic, and conflicting position to plaintiff by taking the deed and assignment

from her; that it was against public policy for them so to do; that in the circumstances of this case they could not do so and still remain in position to protect and defend her interest in the litigation.

At the time of the execution and delivery of the contract, exhibit "A," there was executed and delivered by plaintiff to defendant a certain power of attorney. It conferred no additional powers upon the defendants other than they would have had by virtue of their office as attorneys at law, except it contained a provision which attempted to empower defendants to adjust, compromise, or settle all matters in controversy with the executors or administrators of the estate of James H. Caldwell. This power of attorney must be construed in connection with exhibit "A." We have seen that exhibit "A" is void as being against public policy, in that it prohibited plaintiff from negotiating a settlement with the executors or any other person; that she was prevented by it from adjusting or compromising with any of the other claimants to the estate, etc. This invalid provision in exhibit "A" cannot be made effective or legal by attempting to confer upon the defendants by a separate instrument executed contemporaneously therewith, a power which the plaintiff by law and justice has the first and exclusive right to use and control, and which was illegally withheld from her by the terms of exhibit "A." The power of attorney had no other office than to aid the defendants in carrying out and attempting to make effective the contract which was, as we have seen, against public policy and void. The power of attorney, in all the circumstances of this case, was of no force nor effect, and in no way aids or strengthens the position of defendant. We must therefore hold, and do hold for the foregoing reasons, that the deed and assignment were void.

During the defendants' employment, they advanced on behalf of plaintiff $7,500 with which to purchase the Lovewell interest. They, however, took a note and mortgage from the plaintiff for $12,000, they claiming that the balance over and above $7,500 was for the purpose of purchasing the Smith interest. The defendants have never made any settlement with Smith; settlement with him has been made by the plaintiff. It is apparent, therefore, that the $12,000 note and mortgage should be reduced to $7,500, and as so reduced be lien upon all the land in question. It is therefore held that the note and mortgage are reduced to $7,500; that the defendants are entitled to be repaid said

$7,500, with interest from the date of the note and mortgage at the rate specified in them, and that such mortgage is a lien upon all the land involved in this litigation.

The defendants contend that the execution of the deed and the assignment of the personal property to them was in payment of fees, and the fees having been paid cannot be recovered, and cite much authority which they claim sustains this contention. As we view this matter in this case, this position is untenable. The contract, exhibit "A," being void, there were no fees which would form a consideration for the transfer. The provision in the contract with reference to fees, for the reasons above stated, became invalid, and, as above stated, for many other reasons the transfer by the deed and assignment became and were invalid, void, and of no effect. There is no doubt that a contract for contingent fees is proper and legal. In this case, however, the contract, exhibit "A," for contingent fees, for the reasons above stated, is held to be absolutely void. The defendants in this case as attorneys of law, if entitled to recover anything, are entitled to recover only the reasonable value of their services rendered plaintiff, and of course that could not be recovered in this action.

We have examined thoroughly the specifications of error; and, while there are others than those we have particularly mentioned which would justify reversal of the judgment, we feel it is not necessary to give them particular consideration; they have been examined and considered in connection with what we have stated above.

The judgment appealed from is reversed. The contract, exhibit "A," is hereby as a matter of law declared to be void and of no effect. The deed and assignment are void and should be canceled of record. The $12,000 note and mortgage should be reduced to $7,500, and allowed to draw interest from date at the rate specified therein, and adjudged to be a lien upon all the land; defendants should be required to account to plaintiff for any and all personal property that has come into their hands, possession, or under their control by reason of the assignment or otherwise. It is so ordered. The case is remanded to the trial court for further proceedings not inconsistent with this decision of this court. The appellants are entitled to the statutory costs on appeal.

42 N. D.—38.

Bronson and Robinson, JJ., concur.

Robinson, J.  Fully do I concur in the opinion written by Mr. Justice Grace.

As it appears from the long and bunglesome record, in April, 1916, James Caldwell, of Stark county, made a will, giving to his daughter, May, a nominal sum, and to his wife, $15,000 in cash and a lot of other property, amounting to half his estate, and to the above-named trustees he left the rest of his estate to be held in trust and to accumulate for twenty-five years, awaiting the advent of a son, long lost and probably dead.  If the son did not return and claim his share of the estate, then, after the lapse of twenty-five years, it was to go to a sister of deceased.  About a year after the making of the will, and at the same moment, the testator and his wife were instantly killed.  The deceased left an estate of $60,000.  As he did not leave a surviving wife, the whole estate went to his issue.  It went in equal shares to May Moran and the long lost son, if alive, and, if dead, then, by the terms of the will, the share of the son went to the sister of the deceased. Will or no will—son or no son—May Moran had title clear to one half of the estate.  She retained defendants as her attorneys.  They at once induced her to sign a contract of May 9, 1917, giving them 50 per cent of any sum realized from the estate, in addition to expense not exceeding $3,000.  And thereby she contracted to make no settlement, adjustment, or contract regarding the estate, unless by consent of her attorneys.  They induced her to sign a power of attorney, giving them entire and full control, with a right to compromise and settle all matters.  Then on August 28, 1917, they induced her to make a deed conveying to them a half interest in all the land, 4,161 acres, and a half interest in all the other property of the estate.  Then, on August 28th, they induced her to make an assignment transferring to them an undivided half interest in all the estate coming to her as heir at law, legatee, or by assignment or conveyance of other heirs or legatees, with directions to the trustees to deliver such property to them, and with directions to the county court to transfer and decree the same to. them.  Then, under date of September 4, 1917, the plaintiff made to her attorneys a mortgage of her interest in the estate, to secure the payment of a promissory note for $12,000, and interest at the rate

of 10 per cent, in one year. This note and mortgage was given to secure $7,500, which the attorneys paid in cash to the sister of the deceased for an assignment of all her interest in the estate to May Moran. It was also given to secure an additional sum which was not paid. Hence the mortgage secures only $7,500 and interest, and it should not have been taken for a greater sum.

Manifestly there was nothing in the case to warrant either the original agreement, the deed, or the assignment. While an attorney may bargain for a fair and reasonable fee, he may not in effect rob his client by contracting for an extortionate or exorbitant fee. When Jacob bargained with starving Esau to sell him his birthright for a meal of bread and pottage, he took an unconscionable and unfair advantage of another's necessity and distress, and that is just what was done in this case. Though Esau may have fully comprehended the nature of his simple bargain, that did not make it fair or conscionable; and though the plaintiff may have fully comprehended the legal tenor and effect of the papers she signed, though she may have been given the most lucid explanations of the same, that does not make the papers either legal, fair, or conscionable. The whole transaction admits of no palliation or excuse. It bears the indelible stamp of unfairness and oppression. It has subjected the plaintiff to anxiety and ruinous expense far in excess of taxable costs. This expense and every dollar of it the defendants should pay.

An attorney is a minister of justice. He has no right to bind his own client, or any other person, with burdens that are grievous and heavy to be borne.

ADDENDA per ROBINSON, J.: Mr. Casey complains that the opinion is a grave personal reflection on his character as an attorney, but it should not be so construed; such is not the purpose of the opinion.

CHRISTIANSON, Ch. J., and BIRDZELL, J. (concurring in part and dissenting in part). We concur in the judgment of reversal but not in that portion of the judgment which declares the contract, exhibit "A," null and void. Inasmuch as the majority of the court has based the judgment upon reasons with which we are not in accord, and have made holdings upon certain legal propositions that are not in accord

with our views of the law, we deem it necessary to express both the reasons for our partial concurrence in the judgment and for our dissent in so far as we dissent from the holdings of the majority opinion.

Under the terms of the last will and testament of James H. Caldwell, the plaintiff, May L. Moran, was only allowed an unconditional bequest of $25. It was further provided that if the son, Jay Allen Caldwell, appeared and received the property bequeathed to him he was requested by the testator "to make such provision for his sister, May L. Moran, as he may deem meet and proper." And the trustees were authorized, after paying taxes and expenses of maintenance of the trust property, to use such portion of the net income therefrom as they may deem meet and proper and expedient for the care and support of the daughter, May L. Moran. But it was provided that if the daughter, May L. Moran, should object to the probate of the will or *in any way attempt to contest or aid in the contesting of the same or any of the provisions thereof, or the distribution of the estate thereunder, then and in that event the testator annulled the provisions made for her, excepting the bequest of the sum of* $25. The testator's wife, Laura E. Caldwell, was given a life estate in the homestead, and $15,000, to be derived from the sale of personal or real property. Two bequests of $1,000 each were made to two sisters of the testator. All the remainder of the property was devised to the son, Jay Allen Caldwell, and three trustees were appointed to hold such property in trust for him for the period of twenty-five years. If the son, Jay Allen Caldwell, did not appear and claim the property during that period, it went to the testator's sister, Deborah Lovewell, or the heirs of her body. Therefore when the plaintiff made her arrangements with her attorneys, the defendants in this case, this condition existed,—in order that the plaintiff might receive anything substantial out of her father's estate the will must be adjudged invalid or inoperative. If the will was adjudged valid these obstacles presented themselves: (1) If the trust arrangement was valid the property would be in the hands of the trustees for a period of twenty-five years; (2) at the end of that period the property would not go to the plaintiff, but to the testator's sister, Deborah Lovewell, or the heirs of her body; and (3) if plaintiff contested the will or objected to the probate thereof she was shorn of all rights thereunder, except the $25 bequest. Whether the will was ad-

judged valid or invalid, the question whether the testator or his wife died first was one that had to be faced, as the testator's wife had a son by a former marriage, who would take as her heir. Such was the condition which confronted the plaintiff and her attorneys, at the time the contingent-fee contract was made. Manifestly plaintiff's case was one which would entail a great deal of labor and expense, and the eventual outcome of which was problematical. It is not fair to assume or say that defendants exacted a 50 per cent contingent fee in a case where there was really no question as to the outcome.

The defendants, as plaintiff's attorneys, contested the will. While such contest was pending they negotiated with Deborah Lovewell, and procured from her an assignment to the plaintiff of all of Deborah Lovewell's rights and interest in the estate. The defendants paid to said Deborah Lovewell $7,500 for such assignment. Negotiations were also carried on with Albert Mark Smith (Laura E. Caldwell's son) with a view of obtaining an assignment of his interest in the estate. The $12,000 mortgage was taken by defendants in connection with these two settlements. The $12,000 mortgage is fully explained,— $7,500 was to be paid to Deborah Lovewell, and the defendants believed they could settle the Smith claim for $4,500, and the $12,000 mortgage would cover both claims, and was taken for that purpose. The defendants have never claimed under it more than the $7,500, which they actually paid to Deborah Lovewell. Even at this time the property is tied up in the hands of the trustees for a period of twenty-five years, unless the trust arrangement can be set aside, and if the son, Jay Allen Caldwell, appears within that time the property goes to him, and the contingent fee of the defendants will cease to exist.

On this appeal the validity of the contingent-fee contract was not disputed. In their brief appellants say: "We shall assume for the purposes of this case that the contract of May 9, 1917, was valid," while some reference is made in the complaint to the contract as being invalid. The case was not tried in the court below, nor was it presented in this court on the theory that the contingent-fee contract was void. But the appellants did contend that the arrangement made August 28, 1917, whereby the plaintiff, May L. Moran, deeded an undivided one-half interest in the lands, and assigned a one-half interest in the estate, was not in accordance with the terms of the contingent-fee contract,

but divergent therefrom and unauthorized under its terms. This contention is amply supported both by the law and the facts of the case, and we agree with the majority of the court in upholding the contention and setting aside the deed and assignment.

The majority, however, not only hold that the deed and assignment are void, but they hold as well that the contingent-fee contract, exhibit "A," is void, and in doing so they overrule the case of Greenleaf v. Minneapolis, St. P. & S. Ste. M. R. Co. 30 N. D. 112, 151 N. W. 879, Ann. Cas. 1917D, 908, although the case is not referred to in the opinion. Both parties upon this appeal have recognized the rule laid down in the Greenleaf Case as being correct, and in our judgment there is no occasion for overruling that decision. The majority in fact recognizes that the relief sought by the appellants would have to be given regardless of whether the contract was void or not, for in the opinion it is said that there is another reason why the deed and assignment are void. Under the Greenleaf Case there can be no question but what that provision of the contract which attempts to deprive the client of control over the litigation is void, and it is so conceded by the appellants. The question of the effect of such a void stipulation in a contract providing for a contingent fee was exhaustively considered in the Greenleaf Case, and in our judgment the principles laid down as the deliberate judgment of this court are applicable to contracts of the character of exhibit "A" in this case. Especially should they be regarded as law for all purposes of this appeal where admittedly the same judgment would have to be entered if the Greenleaf Case were followed. We do not regard the free overruling of a precedent that has so much to support it as being consonant with good judicial policy.

Another matter in which we disagree with the majority is the holding as to the right of the executors to intervene in this action. It is held by the majority that the executors had an interest in this controversy that justified them in intervening in the action, and that they were not only proper, but necessary parties. It seems to us that this holding is incorrect. It will be noticed that under the terms of the will, as stated in this opinion, it was expressly provided that if the plaintiff in this action should object to the probate of the will or in any way contest the distribution of the estate thereunder, all provision made for her was annulled, excepting only the bequest of the

sum of $25. In the light of this provision of the will it became the manifest duty of the executors administering the estate to see that the testamentary intention of the deceased was carried out. And any attempt on their part to deal liberally with May L. Moran cannot be justified under the will. On the contrary it would amount to an attempt to defeat the very provisions of the will that it is their duty to uphold, if possible. It will be noted, further, that the prayer for relief in the complaint in intervention is the same as in the plaintiff's complaint. It is inconceivable to us that the executors of the will of James H. Caldwell should be concerned with any arrangements that may be made between an heir who is *sui juris* and an attorney looking toward obtaining a share in the estate. They have an interest of course in seeing that the estate is properly administered, but they do not stand in the position of guardians of persons of full age and legal capacity, especially of persons whose interests are in every way conflicting with the terms of the will that it is their duty, under the law and the will, to safeguard. The complaint in intervention should be dismissed. To entertain it is to encourage the executors to make common cause with an heir who is practically disinherited by the will, and likewise to encourage the heir to seek the favor of those who are not in a position to grant favors.