B. W. Schouweiler, K. Currie and W. H. Cox v. Hon. Frank P. Allen, District Judge of the Fourth Judicial District, North Dakota, the District Court of the Fourth Judicial District in and for Richland County, N. D., J. M. Kramer, Clerk of the District Court of Richland County, N. D., Fairmount School District in Richland County, N. D., a School Corporation, M. L. Branson, H. O. Hubbard and K. Currie, Directors of Said School District, and T. P. Williams.

Opinion filed October 8, 1908.

**Attorney and Client — Discharge of Attorney.**

1. A suitor has the right to discharge his attorney, either with or without reason, at any time during the progress of the litigation he was employed to conduct, on paying or securing payment for his services.

**Intervention — Voters and Taxpayers.**

2. On the facts of this case, an application made by voters and taxpayers of a school district to be allowed to defend a pending action, brought to enjoin the issuance of the bonds of the district, did not constitute a petition to intervene.

**Schools and School Districts — Bond Issue — Elections — Duty of School Officers.**

3. The officers of a school district are in effect agents of the voters and taxpayers, and when the district, at a regularly called and conducted election, votes to issue the bonds of the district and from the proceeds to build a schoolhouse, such vote is an instruction by the principal, and such officers have no discretion as to obeying their instructions.

**Same — Stipulation for Judgment — Fraud.**

4. After a majority of the voters of a school district had instructed the school board to issue bonds for building purposes, a taxpayer and voter of the district brought suit to enjoin the issuance of the bonds voted, alleging that enough illegal votes were cast in favor of the bonds to change the result.

The school board answered, denying all allegations of the complaint, relating to illegal votes; but subsequently a majority of the board stipulated personally with the plaintiff in such action that judgment should be rendered and entered in favor of the plaintiff permanently enjoining the defendants from issuing the bonds so voted. On such stipulation, without the submission of evidence, and without making any findings, the court ordered judgment as stipulated.

*Held,* that such stipulation constitutes collusion between the plaintiff and the officers, and a legal fraud upon the district and the court, and furnished no basis for the judgment entered, and that it was error to order judgment upon such collusive, illegal and void stipulation.

#### Bonds — Duty of Board of Election Authorizing Issue.

5. Section 911, Rev. Codes 1905, which provides that, if a majority of all the votes cast at a school district election at which the issue of bonds is submitted should be in favor of issuing bonds, the school board through its proper officers shall forthwith issue bonds in accordance with such vote, is mandatory.

#### Supreme Court — Prerogative Writ — Certiorari.

6. On application of voters and taxpayers in such case for a writ of certiorari or other appropriate writ under the supervisory control of this court over inferior courts:

*Held,* that such power should not be lightly exercised, and that inasmuch as the applicants have the right to apply to the district court for an order vacating the judgment so entered, and by such application become parties to the record, and, if such application is denied, may have the action complained of reviewed, no such exigency exists as warrants this court in granting the writ applied for.

Original application for writ of certiorari by B. W. Schouweiler and others to be directed to Frank P. Allen and others.

Writ denied.

*W. S. Lauder,* for plaintiff.

Persons not parties below, having an interest in the proceeding to be reviewed may apply for certiorari. Champion v. Com'rs, 5 Dak. 416, 41 N. W. 739; State v. Rose, 4 N. D. 319, 58 N. W. 514; 6 Cyc. 767, 768, 769.

Intervention must be before entry of judgment. Revised Codes 1905, section 6825; Carey v. Brown, 58 Cal. 180; Hocker v. Kelley, 14 Cal. 165; Owens v. Colgan, 32 Pac. 519; Foerny v. Ball, 6 La. Ann. 685.

Courts will not dispose of a case at the will of the parties thereto, where the rights of others, or the public will be prejudiced. School Dist. v. Clifcorn, 112 N. W. 1099; State v. Ludvig, 82 N. W. 158; Van Gordon v. Goldamer, 16 N. D. 323, 113 N. W. 609; McDuffie v. Greenway, 24 Texas, 625; Penobscot R. Co. v. Mayo, 60 Maine, 306; Major v. Collins, 11 Ill. App. 658; McAdam v. Jenkins, 64 N. C. 795.

*Purcell & Divet, Dan. R. Jones* and *Chas. E. Wolfe,* for respondents.

Where intervention is denied the applicant can obtain full relief by an appeal from the order denying. Coburn v. Smart, 53 Cal. 742; Stich v. Dickinson, 38 Cal. 608; Amundson v. Wheelock, 8 Pickering, 470; Harman v. Barhydt, 31 N. W. 488; Henry v. Insurance Co., 26 Pac. 176; Trenton v. Highland, 10 So. 442; Hall v. Jack, 32 Md. 253; Keefe v. Branch, 84 N. C. 202; Rollins v. Rollins, 76 N. C. 264; Bass v. Fountelroy, 11 Texas, 698.

SPALDING, J.   This is an application for a writ of certiorari or other proper writ to be directed to the judge of the district court of the Fourth judicial district, the clerk of that court for Richland county, the officers of the Fairmount school district, and T. P. Williams. All the records in the action sought to be reviewed are before us, and the application may be considered on its merits.

April 30, 1907, a special election was held in the Fairmount school district on the proposition of issuing the bonds of that district in the amount of $18,000, for the purpose of building a new schoolhouse with the proceeds. Neither the regularity nor validity of the preliminary steps leading up to the election or the conduct of the election is questioned. At such election 271 votes were cast, 140 of which were in favor of issuing bonds and 131 against it. The result was duly certified to the county auditor, and a tax spread on his records against the property of the district to create a sinking fund to pay the bonds as they might mature, in accordance with the statute. It is alleged that this tax became a valid charge against the property of the district for the year 1907. The board of directors of the district, when the election was held, consisted of three members, of whom two were in favor of the issuance of the bonds and one was opposed thereto. After the election the board proceeded to carry out the instructions of the voters, plans and specifications for the proposed building were procured, arrangements were perfected for the sale of the bonds to the state, and advertisements for bids for the construction of the schoolhouse were published. The board was about to sell the bonds and enter into contracts for the building of the schoolhouse when the annual school election occurred on the 4th of June, 1907. At that election a new director opposed to the issuance of bonds was elected in place of one who had favored them, making the new board

stand one in favor of their issuance and two opposed thereto. Immediately after this election and such change in the complexion of the school board, an action was commenced by one T. P. Williams, for himself and others similarly situated, for the purpose of enjoining the officers from issuing the bonds and from proceeding further to carry out the instructions of the voters given at the special election referred to. It is unnecessary to specify at length the allegations of the complaint. The material point is that it charged that at the special election referred to 15 of the persons who voted in favor of bonds "were not legal voters of the district, or within the county of Richland, and had no right or authority to vote at said election upon any question or subject whatever, and that the defendants and directors of such school district aforesaid, knowing that such persons were not legal voters and had no right or authority to vote at said election or meeting, and knowing that the ballots so cast by said voters were void (and the same were void), yet counted said votes as being legal votes in favor of the issuance of said bonds, when in truth and in fact the majority of the legal voters present and voting at said election or meeting cast written or printed ballots therein having thereon the words 'Against Bonds.'"

An order restraining the board from proceeding further in carrying out the instructions of the voters, together with an order to show cause why such injunction should not be continued during the pendency of such action, was obtained from the district court. Hearing of this order to show cause was had, at which affidavits were submitted on both sides, and the restraining order was continued in force. The answer of the defendants, among other things, denied that any illegal ballots were cast in favor of bonds. Hon. W. S. Lauder was employed by the board to prepare and serve an answer and to conduct the defense, and the action was placed on the calendar. A few days before the opening of the term the two members of the school board opposed to the issuance of bonds called upon Lauder and informed him that unless he would, as attorney for such board, stipulate that judgment might be entered without trial adjudging and decreeing that the allegations of the complaint were true and that the temporary injunction should be made permanent and perpetual, said school board would discharge him as its attorney and employ some other attorney who would conduct such litigation in accordance with the wishes of

—33—

said directors. Said Lauder refused to enter into such stipulation, and was later notified by the school board, by letter, that he was discharged, whereupon he informed the board that he had been employed to appear in the action and test the validity of the election, and that he declined to recognize the authority of the board to discharge him, and that he refused to turn over to the clerk the papers and documents pertaining to the case, and that he expected to try it on its merits. December 10, 1907, the board adopted a resolution instructing the attorney for the board to appear in court and consent on the part of defendants that the temporary injunction be made permanent and to take all legal steps to procure the same to be done. The resolution further authorized and directed him to represent and show to the court that in the opinion of the board the material allegations of the complaint referred to were true and that the district ought not to be put to the enormous expense of defending the action. A resolution was also adopted by the board, authorizing its president to employ an attorney to represent it in such action who would consent on the written direction of the board to the temporary injunction being made permanent. December 11th Lauder was written by the board that he was discharged. A motion was submitted to the district court, and an order entered substituting Dan R. Jones as attorney for the board in said action. The motion was supported by the verified petition of two of the directors, which recited the controversy with Lauder, and further stated that they had investigated the facts stated in the complaint and had come to the conclusion that it would be for the best interest of the district that judgment be entered in favor of the plaintiff, Williams and that they believed the material facts in the complaint to be true, and that a trial of the action would put the district to large and unnecessary expense. Lauder submitted his own affidavit in opposition to the applicant for substitution, wherein he set forth the proceedings relating to the election and the steps taken in regard to the action and what had been done by the board regarding the issuance of bonds and the letting of contracts, etc., and, further, that it was the purpose of the majority of the directors to prevent, if possible, all judicial investigation into the validity of such election, and to obtain from the court, without any trial or investigation whatever of the facts, an adjudication to the effect that such election was illegal and void, and that it was the deliberate purpose of the majority of such board by collusion and fraud to

nullify and set at naught, without any trial or investigation of the facts, the result of the election, and thereby thwart the will of the people as expressed by such election, and that the majority of the board was attempting to accomplish this by indirection, collusion, and fraud, without regard to the merits of the controversy; that he had made a very thorough investigation of all the facts embraced within the pleadings, and that he believed that the allegations of the complaint relating to illegal votes being cast were not true, and that a trial of the issue raised by the pleadings would convince the court that such election was fairly and honestly conducted, and that a clear majority of the legal votes cast thereat were in favor of the issuance of the bonds for the construction of the school-house. This affidavit was corroborated by the affidavits of other taxpayers and voters of the district.

The order of substitution was served on the 10th day of February, 1908, and immediately thereafter Lauder presented to the court a petition of 70 of the electors and taxpayers of the school district, praying that said Lauder be permitted to appear in said action on behalf of the people and taxpayers of the district and take part in the trial thereof, and agreeing to become personally responsible for the fees and charges of said Lauder for his services; and they offered in open court to assume the financial burden of carrying on the litigation. This petition was at once denied by the court. Immediately afterward a stipulation was filed, which, omitting title and venue, reads as follows: "It is hereby stipulated and agreed between the parties to the before entitled action that judgment may be rendered and entered here in favor of the plaintiff and against the defendants, making permanent the temporary injunctional order hereinbefore issued, but without cost to either party." This was signed as follows: "T. P. Williams, Plaintiff in Person. H. O. Hubbard, M. L. Branson, the School Board of Said Defendant School District, Who are Authorized by Act of Said Board to Sign this Agreement." On filing the stipulation, an order for judgment was entered in favor of the plaintiff. It recites that it is made upon the stipulation signed by the plaintiff in person and by the defendant Fairmount school district in person. It directed the entry of judgment making the temporary injunctional order theretofore issued permanent. The court made no findings of fact or conclusions of law. Judgment was thereupon entered in favor of the plaintiff, pursuant to the terms of the stipulation and

the order of the court. February 26th a motion was submitted to the court by the petitioners herein, as resident voters and taxpayers of Fairmount school district for an order vacating the judgment referred to, for the purpose of permitting petitioners to intervene in the action as parties defendant and defend the same on its merits. This application was denied, and the petitioners are in this court seeking relief, claiming that under the supervisory power over inferior courts, conferred by the constitution of this state upon this court, the proceedings of the district court in question should be annulled.

It was first contended that the district court had no right under the circumstances to order the substitution of attorneys, that the action of the majority of the board of directors, as appears from the papers before the court, discloses that they were seeking such substitution for an unlawful purpose, and particularly because Lauder had refused to comply with their directions and stipulate for a permanent injunction restraining the issuance of bonds, and that they desired to employ an attorney who would comply with their illegal and unwarranted instructions. We are of the opinion that this does not furnish ground for granting the writ. A suitor has the right to discharge his attorney, either with or without reason, at any time during the progress of the litigation which he was employed to conduct, provided his compensation is paid or secured. 9 Current Law, 303; 3 Am. & Eng. Enc. Law, 409; 4 Cyc. 954.

The last-named motion was treated solely as an application after judgment to intervene. It is now conceded that an application to intervene, made after judgment, comes too late, and it can hardly be contended that the petition asking permission to have Lauder retained in the case in behalf of the citizens and taxpayers, not accompanied by any proposed complaint in intervention, can be construed as a petition to intervene. The code provides for an election in school districts to vote upon the issuance of bonds in such cases, and section 911, Revised Codes 1905, contains the requirement that, if the majority of all votes cast "shall be in favor of issuing bonds, the school board, through its proper officers, shall forthwith issue bonds in accordance with such vote." The bonds cannot be issued except upon an affirmative vote. The wisdom of their issuance is a question solely for the voters of the district themselves, and not for the board, to determine. The mem-

bers of the board are but the special agents of the people consti-tuting the school district. The law has provided the method whereby the principal—in this case the voters—may instruct its agents, and when the instruction is in favor of issuing bonds the legislature has not seen fit to provide any method for revoking such instruction. After an affirmative vote at the election, the duties of the school board are ministerial, and consist in obeying implic-itly the directions of the voters so given. No evidence was sub-mitted, unless the affidavits submitted on the preliminary hearings could be called evidence, and they did not show the casting of enough illegal votes in favor of bonds to change the result. Of course, we cannot say what the testimony of the same persons might disclose if they were placed on the witness stand and sub-jected to rigid cross-examination; but as the record stands there was nothing on which the court could base its order for judgment, except the naked stipulation of the parties, and that stipulation was made in direct defiance of law. It was a legal fraud on the voters and taxpayers, the patrons of the school, and the court. It may have been made with the best of intentions, and the members of the board may have been misled by their desire to prevent the issuance of bonds; yet it constituted collusion, and was of no force or effect, and furnished no basis for a judgment. The court had acquired jurisdiction of the parties, and had jurisdiction of the sub-ject-matter; but it was error for it to order judgment upon a col-lusive, illegal, and void stipulation. The fundamental error of the court lies in the position it seems to have taken that the mat-ters involved related only to the plaintiff and to the directors of the school district, and that the voters, taxpayers, and patrons were in no way interested.

We cite but a few of the many authorities either directly in point or analogous. Kelley & Alexander v. Mayor and Aldermen of Milan, 127 U. S. 139, 8 Sup. Ct. 1101, 32 L. Ed. 77; Sturm v. School District No. 70 et al., 45 Minn. 88, 47 N. W. 462; School District Tp. v. Lombard, Fed. Cas. No. 12,478; Kane v. Indepen-dent School District of Rock Rapids et al., 82 Iowa, 5, 47 N. W. 1076; Nevil et al. v. Clifford, 55 Wis. 161, 12 N. W. 419; Inde-pendent School Dist. of Rock Rapids et al. v. Schreiner et al., 46 Iowa, 172; Babcock Hardware Co. v. Farmers' & Drovers' Bank, 54 Kan. 273, 38 Pac. 256; Balch v. Beach et al., 119 Wis. 77, 95 N. W. 132; Frederick Milling Co. v. Frederick Farmers' Alliance

Co., 20 S. D. 335, 106 N. W. 298; Hemmer v. Bonson (Wis.) 117
N. W. 257. The principle is clearly stated in Kelly & Alexander
v. Mayor, etc., supra. It was an action to recover on municipal
bonds which had been adjudged valid and binding on the town.
The defense was that the decree holding them valid had been pro-
cured by combination and fraud between the railroad company,
for whose benefit they were issued, and agents and attorneys of the
defendant. The court held the agreement made in this action by
the mayor with the railroad that the bonds were valid could give
them no validity. The court, through Mr. Justice Blatchford, said:
"The act of the mayor in signing the agreement could give no va-
lidity to the bonds, if they had none at the time the agreement was
made. * * * The decree of the court was based solely upon
the declaration of the mayor, in the agreement, that the bonds were
valid; and that declaration was of no more effect than the declara-
tion of the mayor in the bill in chancery that the bonds were invalid.
* * * This was not the case of a submission to the court of a
question for its decision on the merits, but it was a consent in ad-
vance to a particular decision, by a person who had no right to
bind the town by such consent, because it gave life to invalid bonds,
and the authorities of the town had no more power to do so than
they had to issue the bonds originally."

The question then arises, on this statement of the facts and the
law, whether the writ asked for should be granted. It is contended
that this court should grant it under its power to supervise and con-
trol the action of inferior courts; but this supervisory power must
be governed by some reasonable rules and regulations, and it should
not be lightly exercised. The authorities on the subject of its exer-
cise are in conflict. We are of the opinion that it should not be
made use of where it is not called for by some exigency. It is
conceded by the respondents in this proceeding that the petitioners
still have the right to apply to the district court to vacate its judg-
ment, and we think this correct. While they are not parties by
name to the action, they are interested as voters and taxpayers of
the district and patrons of the school; and it is only such who are
interested, as the directors themselves are in effect merely the agents
of the district. We held, in Plano Mfg. Co. v. Doyle, 116 N. W.
529, that in cases tried by the court the power to correct errors in
the findings or judgment is possessed by the district court while it
retains jurisdiction of the action. The interested parties, seeking

to have the will of the voters made effective, may by motion ask to have the judgment, entered contrary to law, vacated, and thus become parties to the record. This is supported by ample authority. Aetna Insurance Co. v. Aldrich et al., 38 Wis. 107; Lowber v. Mayor, etc., of N. Y., 26 Barb. (N. Y.) 262; Elliott v. Superior Court, 144 Cal. 501, 77 Pac. 1109, 103 Am. St. Rep. 102. In the latter case it is held that one not a party, but whose rights are injuriously affected by a judgment, cannot resort to certiorari, but may move to set aside the judgment, and on the denial of the motion may appeal, and thereby have the judgment of which he complains reviewed for error.

While the applicants possess this remedy, and perhaps others, we see no such extreme necessity for the writ asked as to justify its issuance, even assuming it might be granted in the exercise of the supervisory control possessed by this court.

The writ is denied. All concur.