CHARLES SIMON, Respondent, v. CHICAGO, MILWAUKEE, & ST. PAUL RAILWAY COMPANY, a Corporation, Appellant.

(177 N. W. 107.)

**Attorney and client — contract for contingent fee for services.**

1. Where an attorney, having made a contract for a contingent fee in a personal injury action, has been dismissed by his client, who has thereafter employed other attorneys to prosecute the action, and where such action is finally settled, and moneys retained by the defendant therein, to cover the amount of the first attorney's lien claimed, with the knowledge and without the objection of such attorney, it is *held*, upon an action by such attorney to recover payment for his lien, that the amount of recovery must be based upon the reasonable value of the services performed or the actual damages sustained by breach of the contract.

**Attorney and client — stipulation that client cannot settle without attorneys' consent held void.**

2. Where in such action, by the first attorney, it appears that the second

---

Note.—That the great weight of authority holds that where an attorney is employed on a contingent fee consisting of a percentage of the amount recovered, and the client compromises the case, the amount for which the case is settled is the basis on which the attorney's percentage is to be computed, will be found by an examination of the cases in a note in 3 A.L.R. 472, on amount or basis of recovery by attorney who takes case on contingent fee, where client discontinues, settles, or compromises.

On validity of provision, in contract for contingent fee, forbidding client to settle claim without attorney's consent, see note in 14 L.R.A. (N.S.) 1101.

attorneys employed are interested, by reason of their contingent contract, in the amount retained, and, further, that their contract contains the stipulation that no settlement shall be made by their client without their consent, it is *held* that such contract provision is void as against public policy, and their interest, if any, in the fund involved, must be determined by the reasonable value of their services rendered, if not fully theretofore paid.

**Attorney and client — client properly a party to dispute between his attorney and defendant for fees.**

3. In such action, it is further *held* that the former client of such attorneys is properly a party interested, and is entitled to receive any moneys remaining after the payment of the amount justly due his attorneys.

Opinion filed March 1, 1920.   Rehearing denied March 26, 1920.

Proceedings in District Court, Stark County, *Nuessle,* J., upon an attorney's lien.

From a judgment in favor of the plaintiff, the defendant has appealed.

Reversed and remanded with directions.

*E. L. Granthem* and *Jacobson & Murray,* for appellant.

"This right of discharge exists even though a contingent fee has been agreed upon, or an irrevocable power of attorney has been given, or the attorney has rendered valuable services under his employment, or the client is indebted to him therefor, or for moneys advanced in the prosecution or defense of the action." 6 C. J. 676, §§ 193, 677, 678; Schouweiller v. Allen, 17 N. D. 510; Gage v. Atwater, 136 Cal. 170; 68 Pac. 581; Price v. Western Loan, etc., Co. 35 Utah, 379, 100 Pac. 677; Henry v. Vance, 111 Ky. 72, 81, 63 S. W. 273; Crosby v. Hatch, 155 Iowa, 312, 316, 135 N. W. 1079.

Where the complete performance of an attorney's services has been rendered impossible, or otherwise prevented, by the act of his client, the attorney may, as a general rule, recover on a quantum meruit for the services actually rendered, or he may have an action for damages.

6 C. J. pp. 724, 725, §§ 292, 293; Such v. New York State Bank, 121 Fed. 202; Union Surety Co. v. Tenney, 102 Ill. App. 95, 65 N. E. 688; French v. Cunningham, 149 Ind. 632, 49 N. E. 797; Henry v. Vance, 111 Ky. 72, 63 S. W. 273; Philbrook v. Moxey, 191 Mass. 33, 77 N. E. 520; Cosgrove v. Burton, 104 Mo. App. 698, 78 S. W. 667;

Foley v. Klienschmidt, 28 Mont. 198, 72 Pac. 432; Harris v. Root, 28 Mont. 259, 72 Pac. 429; Haire v. Hughes, 127 App. Div. 530, 111 N. Y. Supp. 892, 90 N. E. 1159; Whitesell v. New Jersey R. Co. 68 App. Div. 82, 74 N. Y. Supp. 217; O'Niell v. Cranee, 65 App. Div. 358, 72 N. Y. Supp. 812; Bryant v. Brooklyn Heights R. Co. 64 App. Div. 542, 72 N. Y. Supp. 308; Naumer v. Gray, 41 App. Div. 361, 58 N. Y. Supp. 476; Seasongood v. Prager, 70 Misc. 490, 127 N. Y. Supp. 482; Yuells v. Hyman, 84 N. Y. Supp. 460; Rogers v. O'Mary, 95 Tenn. 514, 32 S. W. 462; Southern Nat. Bank v. Curtis (Tex. Civ. App.) 36 S. W. 911; Sheridan County v. Hanna, 9 Wyo. 368, 63 Pac. 1054; Riehl v. Levy, 45 Misc. 425, 90 N. Y. Supp. 411; Schmitt v. Curtiss, 72 Wash. 211, 130 Pac. 89.

"The lien of an attorney entitled him to recover for his own personal services only, and not for the services of another employed by him to assist." 6 C. J. p. 770, § 368, p. 771; Weaver v. Cooper, 73 Ala. 318; Kauffman v. Phillip, 154 Iowa, 542, 134 N. W. 575; Gibson v. Chicago R. Co. 122 Iowa, 565, 98 N. W. 474; Lynn v. Agnew (N. Y.) 166 N. Y. Supp. 274; Martin v. Camp, 219 N. Y. 170, 114 N. E. 46; DeAngelis v. Savings Bank, 132 N. Y. Supp. 295; Corcoran v. Kellogg Struct. Co. 166 N. Y. Supp. 269.

A solicitation of a case or promise of payment of money for the case by an attorney defeats his right to an attorney's lien. Holloway v. Dickenson (Minn.) 163 N. W. 791; Holland v. Sheehan (Minn.) 123 N. W. 1; Ellis v. Frawley (Wis.) 161 N. W. 364; Anker v. C. G. W. R. Co. (Minn.) 167 N. W. 278.

This kind of an action is an action at law. Sweeley v. Sieman (Iowa) 98 N. W. 571; Barthell v. C. M. & St. P. R. Co. 116 N. W. 813.

*W. F. Burnett,* for respondent.

"A suitor has the right to discharge his attorney, either with or without reason, at any time during the progress of the litigation which he was employed to conduct, provided his compensation is paid or secured." Dorsheimer v. Herndon (Neb.) 153 N. W. 497; Detroit v. Whittemore, 27 Mich. 281; Moyer v. Cantiney, 41 Minn. 242, 42 N. W. 1060; Sessions v. Warwick (Wash.) 89 Pac. 482.

"According to the weight of authority, the measure of damages for such breach of contract is the full contract price, especially when the

attorney's work is substantially done, unless some other sum has been agreed upon." 6 C. J. 724; Kersey v. Garton, 77 Mo. 645.

"The fact that the settlement was finally made by another attorney does not affect the plaintiff's right to recover." Scheinsohn v. Lemonek, 84 Ohio St. 424, Ann. Cas. 1912C, 737; McGowan v. Parish, 285 U. S. 300, 59 L. ed. 955; Larned v. Dubuque (Iowa) 53 N. W. 105; Countryman v. California Trona Co. (Cal.) 170 Pac. 1072; Re Carney, 158 N. Y. Supp. 585; Comp. Laws 1913, § 6875; Greenleaf v. Soo, 30 N. D. 112; Greenleaf v. Mpls. St. P. & St. Ste. M. R. Co. 30 N. D. 112; O'Connor v. St. Louis Transit Co. 198 Mo. 622, 115 Am. St. Rep. 495, 8 Ann. Cas. 703; Grand Rapids & I. R. Co. v. Cheboygan Circuit Judge (Mich.) 126 N. W. 56; Zentmire v. Brailey (Neb.) 130 N. W. 1047; Lewis v. Omaha St. R. Co. (Neb.) 114 N. W. 281; 2 R. C. L. § 171, p. 1080; Cheshire v. Des Moines City R. Co. 153 Iowa, 188, 133 N. W. 324.

"It is only by virtue of statutory provisions that a court of law has jurisdiction to enforce an attorney's lien, and, in the absence of such statutes, the proper method for enforcing such lien is by resort to equity." 2 R. C. L. 1085; Fillmore v. Wells, 10 Colo. 228, 3 Am. St. Rep. 567, 15 Pac. 343; Alexander v. Monroe, 54 Or. 500, 135 Am. St. Rep. 1040, 101 Pac. 903, 103 Pac. 514.

The rights of the attorney, under his lien, are those of an equitable assignee. Warfield v. Campbell, 38 Ala. 534; Ely v. Cooke, 28 N. Y. 365; Perry v. Chester, 53 N. Y. 240; Marshall v. Meech, 51 N. Y. 140; Rooney v. Railroad Co. 18 N. Y. 368.

Where notice of a lien is given, and before trial and judgment the parties settle the case and the suit is dismissed, the attorney may maintain a separate action to recover the amount due upon his lien, and in such action the client is not a necessary party. Story, Eq. Pl. ¶ 211; Barber, Parties, 456; Bell v. Lake County, 141 Pac. 861; Louisville & N. R. Co. v. Procter (Ky.) 51 S. W. 561; Yonge v. St. Louis Transit Co. (Mo.) 84 S. W. 184; 4 Cyc. 1017; Davidson v. Board of Comm. (Colo.) 59 Pac. 46.

An attorney's lien may be foreclosed in an equitable action whether it is an attorney's lien at statute or common law. Fillmore v. Wells (Colo.) 3 Am. St. Rep. 574; Parsons v. Hawley (Iowa) 60 N. W. 520;

Wetherby v. Weaver (Minn.) 52 N. W. 970; 6 C. J. p. 802, ¶ 422; 4 Cyc. 1020, 1022; Taylor v. St. Louis Transit Co. 198 Mo. 715.

BRONSON, J. This is a proceeding upon an attorney's lien. On November, 16, 1916, the plaintiff, an attorney, made a contract with one Franz, to prosecute an action against the defendant for injuries received by Franz upon a contingent-fee basis. The contract provided for a fee of 25 per cent contingent upon the amount recovered in suit or settlement, after deducting certain costs and expenses.

Pursuant thereto, on November 23, 1916, such attorney instituted an action against the defendant in behalf of Franz, and served notice of his attorney's lien. This action was thereafter removed by the defendant to the Federal court. Subsequently, Franz made another contract with Jacobson & Murray, attorneys at law, for the prosecution of the same action. This contract provided for a contingent fee of 33⅓ per cent of the amount to be recovered in suit or settlement, and further provided that no settlement should be made by Franz without the consent of his attorneys. Such attorneys thereupon prepared a formal dismissal of the action already instituted in behalf of Franz; the same was signed by Franz and forwarded to the clerk of the Federal court. Thereupon another action was commenced in the Federal court, against the defendant, upon the same cause of action.

In May, 1919, the subject-matter came up for the consideration of the Federal court, both actions appearing upon the calendar. Upon proceedings had in the Federal court, the action was dismissed on an order entered by the court that the amount of the contingent fee, provided for the plaintiff herein, be retained by the defendant pending the further order of the court. Thereupon, the second action was settled for the sum of $11,000, subject to the provision that the defendant should protect itself by retaining sufficient funds or by means of indemnification against the lien of the plaintiff herein. Settlement was made by payment of the money through the First National Bank of Mott, apparently upon an express understanding, or through an undertaking of indemnity, for the retention of sufficient moneys to protect the defendant upon plaintiff's lien.

This action was instituted to recover the amount of such lien, to wit, $2,750, from the defendant.

In the trial court the action was tried to the court, a jury trial being refused, and, pursuant thereto, upon findings of the court, judgment was entered in favor of the plaintiff for $2,750, with interest and costs. This appeal is from the judgment rendered, and a demand is incorporated for a review of the entire case.

Plaintiff's action is founded upon a lien accorded by statute. Comp. Laws 1913, § 6875. To enforce this lien necessarily he must seek to foreclose it as provided by statute Comp. Laws 1913, § 6878. This court has jurisdiction over the enforcement of this lien and the parties. Scharmann v. Union P. R. Co. 144 Minn. 290, 175 N. W. 554.

Franz had the undoubted right to discharge the plaintiff as his attorney, either with or without reason. Schouweiler v. Allen, 17 N. D. 510, 516, 117 N. W. 866. He had the further undoubted right to settle, er compromise the action involved, without the consent of the plaintiff. Paulson v. Lyson, 12 N. D. 354, 97 N. W. 533, 1 Ann. Cas. 245; Southworth v. Rosendahl, 133 Minn. 447, 3 A.L.R. 468, 158 N. W. 717. Accordingly, after the dismissal of the plaintiff as an attorney, his contract for services was both executory and incapable of performance. Specific performance was arrested by the action of Franz in dismissing him. The question presented now is whether the plaintiff is entitled to recover in accordance with his contract, the full measure agreed, the same as if the services had been performed by him, or whether as an attorney he should recover either his damages for breach of the contract, or, in disregard of the contract, the reasonable value of his services. In this case, the plaintiff is not subject alone to principles of equitable consideration, but to conscionable dealing as an officer of this court. In equity, and as an officer of this court, his contract fairly and justly made with his client for the enforcement of his client's rights should undoubtedly be upheld and enforced for services justly rendered and performed for his client. But in the relation of attorney and client, there exists besides, other considerations, the duty of an attorney, as an officer of this court, to so act in the just expedition of his former client's cause, without seeking any sum due or unconscionable advantage by reason of his retainer based alone upon the plain absolute terms of the contract. A client who has the right of dismissing an attorney has the right to employ another. Thus, it might well happen that, in contingent-fee contracts, the entire amount of the client's cause of action might be stip-

ulated away before the attorney, finally employed, might render, in fact, the *services* stipulated to be rendered for the cause of action involved. Upon this record, the client's cause was finally settled and one cause of action dismissed, both with his knowledge and without his objection, for the reason that provision was made for the retaining of funds sufficient to compensate his employment.

In such event the plaintiff, as an attorney, is entitled to receive payment for services rendered in behalf of his client, measured either by *quantum meruit,* or by damages actually sustained through breach of the contract. See Southworth v. Rosendahl, supra.

It appears, necessarily, that the attorneys Jacobson & Murray, by reason of their contract, are interested in the fund or moneys retained by the defendant in the settlement made. Franz necessarily is interested in such amount, for whatever is not justly due his attorneys belongs to him. The contract of Franz's second attorneys, which contained the stipulation prohibiting a settlement without the consent of his attorneys, was invalid as against public policy, and limited such attorneys, in the event of a suit, to recovery based upon the reasonable value of the services rendered by them. Moran v. Simpson, 42 N. D. 575, 173 N. W. 769. See Southworth v. Rosendahl, supra; note in 3 A.L.R. 472.

Therefore, it follows that, in any event, the amount, if any, out of such fund to be paid to Jacobson & Murray, is only that which might be due them for the balance of the reasonable value of their services rendered, if heretofore or otherwise they have not been so fully compensated. It therefore follows, in accordance with the view expressed herein, that the judgment should be reversed and the case remanded for further proceedings in the District Court consonant with this opinion with specific directions to the trial court to cause the second attorneys, Jacobson & Murray, and the former client, Franz, to be made parties to this proceeding for the purposes of determining their respective interest in the moneys involved and retained. It is so ordered. No costs will be allowed either party on this appeal.

GRACE, J., concurs.

ROBINSON, J. I concur in result.

BIRDZELL, J. I dissent.

Robinson, J.   This is an appeal from a judgment against defendant for $2,750 and interest.   The case was tried before the court without a jury, and appellant demands a new trial.   The complaint is based on the statute in regard to attorneys' liens.   The complaint avers that in 1916 at Regent, North Dakota, through the negligence of the defendant, one John P. Franz was run over by a car of defendant, which cut off one foot and destroyed both feet and made him a cripple for life; that as attorney at law, the plaintiff, was retained by Franz to commence an action to recover from defendant $50,000 for the injury; and that, in writing, Franz promised to pay the plaintiff 25 per cent of the sum recovered; that plaintiff commenced the action and served on defendant notice of his contract and his claim for a lien of $12,500; that afterward defendant paid Franz $11,000 in full settlement of the claim for damages.

While the action was pending, attorney Murray, rather unprofessionally, dictated and caused Franz to sign and mail to plaintiff rather insulting letters forbidding him to prosecute the action; that, pursuant to an agreement signed by Franz, Murray commenced a second action in the United States district court, and there met the censure of Judge Amidon, when he moved to dismiss the first action.

However, on assurance that Mr. Simon, the plaintiff in this action, should be paid his fees, the matter was arranged, and the first action dismissed by order of Judge Amidon.

The defendant settled the case by paying Franz, or his attorneys, $11,000.   As it seems, the railway company refused to settle until Mr. Murray deposited in the bank the sum sufficient to indemnify the company against the claim of Simon.   The deposit was made and the bank signed a bond to indemnify and save harmless the railway company.   And so it appears that Mr. Murray, or Jacobson & Murray are the real party defendants in this action.

The total amount of attorney fees should not have exceeded $1,000. The case is very simple, and the attorneys did little suffering and little work.

However, some four years ago, in a personal injury suit, a majority of this court erroneously held that in personal injury suits the statutes gives a lien for attorney fees.   Greenleaf Case, 30 N. D. 115, 151 N. W. 879, Ann. Cas. 1917D, 908.   Here is the statute, § 6875: "An attorney has a lien for . . . *money due* his client in the hands of the ad-

verse party, or attorney of such party, in an action or proceeding in which the attorney claiming the lien was employed from the time of giving notice in writing to such adverse party or the attorney . . . [of the lien claimed] ; . . . which notice shall state the amount claimed and in general terms for what services."

Now the principle of law is this: A cause of action for a breach of promise to marry, an assault and battery, a libel, or personal injury, cannot be transferred or mortgaged; it is not assignable; it is not a debt, and when a person cannot transfer or mortgage the subject of an action he cannot subject it to a lien. The statute gives the attorneys a lien for *money due* in the hands of the adverse party. Now the rule of common-law pleading is that when *money is due* the law implies a promise to pay it, and it may be recovered in an action of assumpsit; but surely in cases of assault and battery, libel, false imprisonment, personal injury, and such like, the law does not imply a promise to pay. An assault or personal injury does not *create a debt,* although it may give a cause of action for damages. To give such a lien would be contrary to the statute and the policy of the law, and that is well exemplified in this case. In this simple action for a personal injury, the attorney drafted a summons and complaint and caused them to be served on the defendant, and at the same time asserted a lien on the claim for $12,500, thus barring his client from a legal right to make a settlement. He had neither a legal nor moral right to claim such a lien.

The statute permits an attorney to make a reasonable and fair contract in regard to his fees, but it does not permit him to take an unfair advantage of the necessities and distress of his client. At the time when the contingent contract was drawn the injured party was in no position to bargain with his attorneys, and, as we have said, the suit was very simple; the attorneys sustained no injuries; they did little work and should not be permitted to charge an exorbitant price. In so simple a case 10 per cent for collection is commonly a fair fee. In the contest between the attorneys and the injured party the court should see that the rights of the latter are fully protected and guarded, even against any unfair compromise.

CHRISTIANSON, Ch. J. (dissenting). I dissent. In my opinion the record in this case affirmatively shows that the Federal court of this dis-

trict first obtained, and has never relinquished, jurisdiction over the controversy before us; and hence, under familiar principles applicable to such situations, that court should be permitted "to determine the controversy, and to fully perform and exhaust its jurisdiction, and to decide every issue or question properly arising in the case," and dispose of all "proceedings which are ancillary or incidental" thereto.    15 C. J. 1161, 1162.

In order to properly present my views, I find it necessary to first make some reference to the facts in the case.

On October 30, 1916, one John B. Franz was injured by the defendant railway company at Regent, North Dakota.    On November 16, 1916, he entered into a written contract with the plaintiff, Simon, who is an attorney at law, duly licensed to practice in this state, whereby Simon was reained as Franz's attorney and agreed to prosecute an action against the railway company for such injury on a contingent-fee basis.    The contract provided, in substance, that said Simon would prosecute said action to its final determination in consideration of 25 per cent of the total amount recovered in said action, or the total amount of settlement made, if settlement was made before the final determination of said action in court; and that said Franz would give to said Simon 25 per cent of the amount recovered either in the final determination of the action in court or final settlement with the railroad company, after the costs and expenses of the court proceedings in said action had been deducted from the amount recovered or the amount of settlement obtained.    Thereafter on November 23, 1916, the plaintiff commenced an action against the railway company for $50,000 damages, and served notice of an attorney's lien for 25 per cent of the amount demanded in the complaint, to wit, for the sum of $12,500.    The action was thereafter removed by the defendant railway company to the United States district court.

Subsequently another action was commenced by Franz against the defendant railway company upon the same cause of action.    The second action was commenced in the United States district court of this district. The attorneys representing Franz in the second action were Jacobson & Murray.    Before commencing such action Jacobson & Murray prepared a formal dismissal of the action which the plaintiff had instituted for Franz, caused such stipulation to be executed by Franz, and forwarded

it to the clerk of the United States district court. It appears that the United States district court refused to recognize the stipulation of dismissal, and required that notice be given to Simon of the application to dismiss the action. The result was that both actions appeared upon the calendar of the United States district court which convened at Bismarck in May, 1917. At that time the application for dismissal of the action instituted by the plaintiff, as attorney for Franz, was heard, with the result that on May 18, 1917, the court entered an order to the effect that such action be dismissed upon the condition that 25 per cent of the amount agreed upon to be paid to Franz in settlement of his claim for damages in said suit be retained by the defendant railway company "pending the further order of said court, upon the claim of Charles Simon for legal services rendered the plaintiff upon said claim for damages, determining the amount due said Charles Simon under his contract with Franz." It appears that on the same day a written stipulation was filed in the second action. Such stipulation was dated May 17, 1917. It provided that the action should be dismissed upon the payment by the railway company of the sum of $11,000, subject to the condition that the defendant railway company should protect itself by the retention of sufficient funds, or that it might be indemnified by the plaintiff against all claim of Charles Simon on account of lien or claim for which said railway company might might become liable to said Charles Simon. Thereafter the railway company paid the amount provided for in the stipulation, viz., $11,000. Apparently the money was paid through the First National Bank of Mott, and with the understanding that such bank should retain a sufficient amount to cover the claim of the plaintiff. There was introduced in evidence an undertaking executed by the First National Bank of Mott and one Trousdale and Mueller in favor of the defendant railway company. The undertaking recites the facts relative to the two actions having been brought upon the same cause of action; that the action instituted by the plaintiff as Franz's attorney was dismissed by the Federal court, "subject to the claim of lien by the said Charles Simon upon any funds recovered or paid by the said railroad company in settlement and satisfaction of said claim of John B. Franz," and that Franz and his attorneys intend to contest the claim and lien of said Simon. The undertaking further provides that "for and in consideration of the payment to the said John B. Franz of the said sum

of eleven thousand dollars ($11,000) and a deposit of a sufficient portion thereof in the First National Bank of Mott, North Dakota," receipt of which is acknowledged, the said First National Bank of Mott, Trousdale and Mueller do undertake and agree to defed all actions or proceedings brought by Simon, or on his behalf, and to pay any and all sums required to be paid to him on account of his said claim.

The plaintiff brought this action to recover from the defendant an amount equal to that which the Federal court had required that the defendant should retain "pending the further order" of that court. The action was tried to the court without a jury, and resulted in findings and conclusions in favor of the plaintiff, and defendant appealed from the judgment and demanded a trial anew in this court.

It is undisputed that there was a written contract between the plaintiff and Franz. The contract expressly provided that a certain percentage of the amount recovered by Franz, either by judgment or upon settlement, should be paid to Simon. The plaintiff, as Franz's attorney, commenced an action in accordance with the terms of that contract. It is true Franz had the right to discharge the plaintiff. He also had the right to compromise and settle the action without Simon's consent. But he could not, by either method, abrogate the contract or defeat any lien which Simon had acquired. In Moran v. Simpson, 42 N. D. 575, 173 N. W. 772, this court (in disposing of the contention that when the attorney and client have once agreed upon the amount of compensation it cannot subsequently be increased), said: "Whatever may be the rule in other states, we are satisfied that this rule does not apply in this state. We have a statute which treats of the right and power of an attorney in making a contract. It is § 7789, Compiled Laws 1913, which, so far as material to this case, reads thus: 'The amount of fees of attorneys, solicitors, and counsel in civil and criminal actions must be left to the agreement, express or implied, of the parties.' The language of this statute is plain and cannot be misunderstood. It confers upon the attorney the right to make a contract with his client upon such terms as he and the client may finally agree."

In Schouweiler v. Allen, 17 N. D. 510, 516, 117 S. W. 866, this court said: "A suitor has the right to discharge his attorney, either with or without reason, at any time during the progress of the litigation which he was employed to conduct, *provided his compensation is*

*paid or secured."* In Greenleaf v. Minneapolis, St. P. & S. Ste. M. R. Co. 30 N. D. 112, 151 N. W. 879, Ann. Cas. 1917D, 908, this court held that the attorney's lien given by § 6875, Comp. Laws 1913, "when sought to be asserted in an action or proceeding for the recovery of damages for personal injuries, attaches to that into which the right of action is merged. If a judgment is recovered the lien attaches to it; if a compromise agreement is made the lien attaches to it; and in either case the attorney's lien is such that it cannot be defeated or satisfied by a voluntary payment to his client without his consent," in a case where due notice of the lien has been given to the defendant.

Ruling Case Law says: "An attorney's lien is enforceable through the control the courts have of their judgments and records, and by means of their own process. If an attorney applies to the court to protect his lien, the court will prevent money from being paid over until his demand is satisfied; and if the judgment debtor pays a judgment to the judgment creditors, after notice of the lien, the court may require him to pay it again to the attorney. This is a power which the court exercises toward its officers and suitors within its jurisdiction." 2 R. C. L. p. 1083.

"In a number of states it has been held, either by virtue of express statutory authority, or in the exercise of the inherent power of courts to protect their officers, that an attorney whose lien has attached may apply to the court for relief against any disposition of the litigation or judgment thereon by the parties, which may affect his rights." 2 R. C. L. p. 1083.

Thornton in his work on Attorneys says: "An attorney's right to a lien for services rendered cannot be defeated by substitution. It is not doubted, of course, that the client may discharge his attorney at pleasure, and substitute another in his stead; but, in allowing such substitution, it is customary to impose terms whereby the original attorney is protected in his compensation." Thornton, Attys. at Law, § 647. It has also been held that "the court may require the payment of an attorney's lien as a condition of the discontinuance or dismissal of the cause, or the entry of a judgment for a stipulated amount where the parties have compromised." Thornton, Attys. at Law, § 667; National Exhibition Co. v. Crane, 167 N. Y. 505, 60 N. E. 768; Illinois C. R. Co. v. Wells, 104 Tenn. 706, 59 S. W. 1041.

It will be noted that when it was attempted to dismiss the action which the plaintiff had commenced for Franz, that the Federal court refused to allow it to be done *ex parte* upon the filing of the stipulation of dismissal, and ordered a hearing of the matter. At the hearing Simon appeared in person, the defendant railway company appeared by counsel, and Jacobson & Murray appeared as attorneys for Franz. Hence, all parties interested were present or represented at the hearing.

It seems clear that the real purpose sought to be accomplished by the dismissal of the first action was to obtain a substitution of attorneys in the litigation. And it would seem that the authorities cited above fully justified the Federal court in imposing the conditions which it did in allowing a dismissal of the first action. But even conceding that the order was erroneous, clearly it was not void. The Federal court had jurisdiction of the subject-matter and the parties. The order which it made was not assailed. On the contrary, the parties all acquiesced in and abided by its terms.

The record shows that upon the hearing the Federal court went into the matter quite fully. It considered not only the records and documentary evidence submitted, but interrogated at some length in regard to the facts connected with the preparation of the stipulation of dismissal. At the conclusion of the hearing the Federal court refused to allow the first action to be dismissed, except on the condition that the railway company retain out of the proceeds of the settlement, the amount which the contract between Simon and Franz entitled Simon to receive upon a settlement of the cause of action involved therein. And in the order of dismissal the court provided that the defendant must retain such amount "pending the further order of this court upon the claim of Charles Simon, . . . determining the amount due said Charles Simon under his contract with Franz." It seems to me that the only reasonable interpretation which can be placed upon this language is that the Federal court intended to, and did, reserve to itself jurisdiction and control of the moneys involved in this controversy and over the controversy itself. It specifically required the defendant to retain the amount involved in this litigation, pending the further order of that court upon the claim of Charles Simon, determining the amount due him under his contract with Franz.

There was no occasion for the Federal court to enter the order if it

merely intended to give Simon the right to institute an action against the defendant in some other court to enforce his lien. Under the express holding of this court in Greenleaf v. Minneapolis, St. P. & S. Ste. M. R. Co. 30 N. D. 112, 151 N. W. 879, Ann. Cas. 1917D, 908, he had such right even though the action was dismissed, settlement made, and the full amount thereof paid over to the client. He would have had such right even though the recovery was eventually secured in a second action brought by other attorneys. Gibson v. Chicago, M. & St. P. R. Co. 122 Iowa, 565, 98 N. W. 474. Obviously the Federal court had some object in view in making the order which it did. It, in effect, set aside a certain fund, and provided that the disposition of that fund should be subject to the further order of that court.

Under these circumstances it seems to me that the questions presented in this case ought to have been presented to, and determined by, the Federal court, or at least that that court ought to have been afforded an opportunity to determine it. For "it is a familiar principle that, when a court of competent jurisdiction acquires jurisdiction of the subject-matter of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of; and no court of co-ordinate authority is at liberty to interfere with its action." 7 R. C. L. p. 1067. See also 4 Enc. U. S. Sup. Ct. Rep. 1170; Rock Island Plow Co. v. Western Implement Co. 21 N. D. 608, 132 N. W. 351. This rule has been declared to be of especial importance in its application to Federal and state courts. Farmers Loan & T. Co. v. Lake Street Elev. R. Co. 177 U. S. 51, 61, 44 L. ed. 667, 671, 20 Sup. Ct. Rep. 564. See also, People ex rel. American Surety Co. v. Benham, 71 Misc. 345, 128 N. Y. Supp. 610.

Corpus Juris says: "Where a state and a Federal court have concurrent jurisdiction over the same parties or privies and the same subject-matter, the tribunal where jurisdiction first attaches retains it exclusively, and will be left to determine the controversy, and to fully perform and exhaust its jurisdiction, and to decide every issue or question properly arising in the case. This jurisdiction continues until the judgment rendered in the first action is satisfied, and extends to proceedings which are ancillary or incidental to the action first brought. Accordingly, where the jurisdiction of a state or Federal court has once attached, it cannot be taken away or arrested by proceedings subse-

quently instituted in the other court; but the usual practice is for the court in which the second action is brought not to dismiss such action, but to suspend proceedings therein until the first action is tried and determined." 15 C. J. 1161–1163.

There is nothing said in Scharmann v. Union P. R. Co. 144 Minn. 290, 175 N. W. 554 (cited in the majority opinion), which affects the rule stated, or precludes the application thereof in this case. The Scharmann Case did not deal with questions of commity or conflict of jurisdiction between courts of co-ordinate or concurrent authority. That case was decided on the ground that a certain judgment rendered by a Nebraska court was a nullity for the reason that the court had no jurisdiction over either the person against whom the judgment was rendered, or the res concerning which the judgment purported to adjudicate.

In that case, Scharmann, a locomotive engineer in the employ of the Union Pacific Railway Company in the state of Nebraska, sustained certain injuries. He employed an attorney named Stiles, of Minneapolis, to bring suit against the company, agreeing to allow him for his services one third of the amount recovered either by suit or settlement. Suit was brought in the district court of Hennepin county. In the summer of 1917, Scharmann entered into an agreement with the railway company, "settling the case for $10,000, and dismissing it without the knowledge of plaintiff's attorney, or the payment of his fees." Thereupon in September, 1917, the railway company brought an action in equity in the district court of Buffalo county, Nebraska, against Scharmann, his wife, as conservatrix of his estate, and Stiles, the Minneapolis attorney, as defendants. In its petition the railway company alleged plaintiff's injury; the appointment of his wife as conservatrix of his estate; that the claim against the railway company had been settled for $10,000; that said Stiles claimed an interest in the amount which might be paid to said Scharmann for such injury by virtue of said contract of employment as attorney to prosecute such claim for damages, and that the amount of said Stiles's claim was $3,333.34; that said railway company had paid to said conservatrix, the sum of $6,666.67, and brought into court and deposited with the clerk thereof the balance of said $10,000, to abide the decision of the court as to which of said parties was entitled thereto. The railway company asked that all of said par-

ties be required to interplead concerning the matters in controversy between them.   Summons was served upon Stiles in Minneapolis.   He made no appearance in the Nebraska court.   The other defendants appeared and answered, alleging that Stiles had no interest in or claim upon the funds involved in the settlement.   At a regular term of court a default was entered against Stiles, and, after hearing the proofs, the court made findings that he had no lien upon or interest in such settlement fund.   Thereafter Stiles applied to the distirict court of Hennepin county, Minnesota, to reinstate the cause and allow him to intervene in order to enforce his lien, for the value of his services, against the railway company.   A hearing followed, in which the railway company appeared and opposed the claim of Stiles, with the result that Stiles was awarded judgment against the railway company for $3,333.34, with interest and costs.   In answering the contention that the trial court's decision violated the full faith and credit clause of the Federal Constitution, the Minnesota supreme court said: "If the employment was lawful, as determined by the trial court, then it constituted a valid Minnesota contract.   The action was brought in Minnesota.   The court acquired jurisdiction both of the parties and the cause of action.   The services were all rendered in this state.   Under the Minnesota statute, the intervener had a lien upon the cause of action for his services, from the time of the service of the summons in the action.   The deposit with the clerk in no manner affected the res against which Stiles sought to impress a lien.   Nor did it afford a basis for the service of the summons outside of the state, so as to give the Nebraska court jurisdiction."

It seems to me that neither the principle invoked nor the reasoning applied in the Scharmann Case tends to support the contention that the Federal court ought not to be permitted, or afforded an opportunity, to determine the questions presented in this litigation.   If anything, the reasoning applied in that case tends to support the contrary contention. The action in which Simon rendered services was pending in the Federal court.   The second action was also pending there.   That court had complete jurisdiction of both actions, of the parties, and of the cause of action itself.   According to the Scharmann Case, the Federal court had and retained jurisdiction of the res against which the lien might be impressed, even without the entry of an order such as that entered by the Federal court in this case.

In the majority opinion it is said: "In this case, the plaintiff is not subject alone to principles of equitable consideration, but to conscionable dealing as an officer of this court. In equity, and as an officer of this court, his contract fairly and justly made with his client for the enforcement of his client's rights should undoubtedly be upheld and enforced for services justly rendered and performed for his client. But in the relation of attorney and client there exists besides, other considerations, the duty of an attorney, as an officer of this court, to so act in the just expedition of his former client's cause, without seeking any sum due or unconscionable advantage by reason of his retainer based alone upon the plain absolute terms of the contract." It seems that the majority members invoke and seek to apply the power sometimes asserted, especially by the English courts, that a court of equity may compel its own officers to do justice, "even where the circumstances would give rise to no legal right, and perhaps not even to a right which could be enforced in a court of equity against an ordinary litigant." See Re Thellussen [1919] 2 K. B. 735, 88 L. J. K. B. N. S. 1210, 35 Times L. R. 732, 63 Sol. Jo. 788, 147 L. T. Jo. 292; Re Condon, 30 L. T. N. S. 773, 43 L. J. Bankr. N. S. 107, 22 Week. Rep. 937, L. R. 9 Ch. 609; Re Carnac, 54 L. T. N. S. 439, L. R. 16 Q. B. Div. 308, 54 L. T. N. S. 439, 34 Week. Rep. 421.

While I am entirely agreed that contingent-fee contracts should be subject to the supervision of the courts, I had always supposed that the proper way to bring this about is by appropriate legislation. See 2 R. C. L. pp. 1036–1038. But, assuming for the sake of the argument that a court may, by the exercise of the power which it has over its own officers, say to an attorney that it will not permit him to collect the compensation agreed upon in a "contract fairly and fully made with his client," then it seems to me that this furnished an added reason why the matters involved in this case should be determined by the Federal court. The actions and dealings which lie at the foundation of and constitute the basis of the rights of the respective parties were had in connection with litigation pending in that court. It was an action pending in, and appearing upon the calendar of, that court, which it was sought to dismiss. It was as officers of that court that Simon appeared in the first action, and Jacobson & Murray appeared in the second action. It was in that court that Franz sought to dismiss the action instituted by Simon

in order that he might obviate the plea of a former action pending, which had been interposed by the railway company in the second suit. It was that court which conducted the hearing upon the motion to dismiss, and entered the order permitting a dismissal only on the condition that the defendant retain an amount equal to that which Simon was entitled to receive under the terms of his contract, "pending the further order of" that court, "determining the amount due said Charles Simon under his contract with Franz."

When this case is disposed of on the principles enunciated in the majority opinion, the result will be that the state courts will adjudicate the controversy by applying their judgment as to what is right and conscionable between attorney and client, or between attorneys, in matters which arose, incidental to litigation, in the Federal court,—matters which that court has expressly reserved jurisdiction to determine. It seems to me that the orderly administration of justice and the deference due to the Federal court require that that court be permitted to dispose of the matters involved herein. I therefore believe that this cause should be held in abeyance until the Federal court has rendered its decision or relinquished its jurisdiction.

BIRDZELL, J., concurs.