CHARLES SIMON, Respondent, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, a Corporation, Appellant, and John P. Frantz and Jacobsen & Murray, Copartners, Respondents.

(194 N. W. 706.)

**Former case held controlling.**

Applying the rules of law as stated in Simon v. Chicago, M. & St. P. R. Co. 45 N. D. 251, which control the decision in the instant case, it is *held* that the evidence sustains the findings of the trial court in favor of the plaintiff upon all the facts necessary and material to establish a right to recover a judgment.

Opinion filed June 20, 1923. Rehearing denied July 6, 1923.

Appeal from the District Court of Hettinger County, North Dakota, *Berry,* J.

Affirmed.

*E. L. Grantham* and *Jacobsen & Murray,* for appellants.

"A judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions in terms discussed and decided and on a second review all questions which appeal on the record and have not already been decided, are open for consideration." Mut. L. Ins. Co. v. Hill, 193 U. S. 549, 48 L. ed. 788; Schmidt v. Beiseker (N. D.) 120 N. W. 1096.

"A conclusive answer to such contention is the fact that this precise question was squarely raised and decided on the former appeal adversely to appellant's contention and such decision whether right or wrong, is now the law of the case." Schmidt v. Beiseker (N. D.) 120 N. W. 1096; Barney v. Winona & St. P. R. Co. 117 U. S. 228, 29 L. ed. 858; Alcorn v. Bieseke (Cal.) 111 Pac. 98; Trower v. San Francisco, 169 Pac. 617.

"The doctrine of the law of the case is limited to rulings on questions actually presented and considered on the former appeal." Hunter v. Porter (Idaho) 77 Pac. 434.

"The doctrine of law of the case extends only to the questions squarely presented and distinctly passed upon on the former appeal." Hunter v. Porter, 77 Pac. 434.

"On a second appeal, the appellate court is bound by a former decision on points necessarily determined, but on matters not essential or questions not considered it is not bound. Wastl v. Montana Union R. Co. 61 Pac. 9.

We are unable to see why this action was commenced. It was instituted some four years after the grain on which the plaintiff claimed a lien had been shipped out of the state. The lien could not then be foreclosed by a sale of the subject-matter. An action for damages could then have been maintained against all persons who wrongfully interfered with the wheat to plaintiff's damage, and in such action, the plaintiff could show the fact that he had a lien as a basis for recovery for any conversion of the wheat. See Mares v. Wormington (N. D.) 79 N. W. 441; Greenleaf v. Mpls. St. P. & St. Ste. M. R. Co. 30 N. D. 112.

Should be submitted to a jury. Bibson v. Chi. Mil. R. Co. (Iowa) 98 N. W. 474.

We quote paragraph three of the opinion, second column, p. 475 of that report: "The court correctly presented the case to the jury on the theory that the attorney bringing the action and giving the notice had only a lien for services rendered, of the recovery stipulated for in the contract." Sweeley v. Sieman (Iowa) 98 N. W. 571.

We quote from the opinion, p. 571: "It requires no equitable proceeding for its establishment. It has been held that the attorney may enforce such a lien as an ordinary judgment creditor may proceed summarily against a sheriff who has collected the money on execution, or he may bring a suit at law against the client or the adverse party or both, or, if there be a specific fund he may proceed by motion and order to get the necessary amount set aside for the payment of his claim." Barthell v. C. M. R. Co. (Iowa) 116 N. W. 813.

We quote from first paragraph p. 814 of that case: "Four points are relied upon for reversal. First it is contended that the trial court erred in denying the motion to transfer to the equity calendar. This point is ruled by our previous cases, which hold that the action is at law." Farry v. Davidson (Kan.) 24 Pac. 419.

"Attorneys must proceed in an independent action to establish their lien, and collect their fees." Farry v. Davidson, 24 Pac. 419.

Upon this issue over the objection of Farry all the time, the case was tried by a jury, resulting in a verdict for Whitney and Donaldson for $280. Farry v. Davidson (Kan.) 24 Pac. 420; Egan v. Burnight (S. D.) 149 N. W. 176.

"In a proceeding by an attorney to enforce his lien against the parties to the action, he will get an absolute judgment against his client for

the amount he is entitled to and alternative judgment against the other defendant that he pay the amount covered by the lien if such amount is not collectible out of the client. The judgment need not, however, provide that execution shall first issue against his client, although all the proceeds of the settlement have been paid to him, where it is expressly found that he did not appear, that he was without the jurisdiction of the court, and that he was financially irresponsible." 6 C. J. 803.

Where, in an action against attorneys to recover $2,500 which they retained as fees, plaintiff alleged that they were entitled to retain $1,000 for their services, and defendants' answer nowhere averred that plaintiff assented to defendants' view that $2,500 was a reasonable fee, but only alleged that defendants retained $2,500 as a reasonable charge, what was a reasonable fee, in the absence of agreement was for the jury. Childs v. Littlefield (Mass.) 91 N. E. 1017; (N. D.) 100 N. W. 1084.

"It is true that the complaint and cross complaint refer to the same thing or subject-matter, the lots, but they are not connected with the same controversy concerning the lots. The cause of action which one defendant may set up against his codefendant by a cross complaint must be one arising out of or having reference to the subject of the original action." Yance v. Boyce, 28 N. D. 187.

"When the plaintiff alleges an express contract as a basis for recovery he cannot recover on an implied contract or quantum meruit. This question has been so recently passed upon by this court that no discussion is necessary. It is apparent in the case at bar, that, if the plaintiff might recover upon quantum meruit, the complaint contains no allegations of the value of the services, hence, no foundation is laid for such a recovery." Lowe v. Jensen, 22 N. D. 148; Southworth v. Rosendahl (Minn.) 158 N. W. 717; 'Egan v. Burnight (S. D.) 149 N. W. 176; Mares v. Wormington (N. D.) 79 N. W. 441.

"In our judgment the trial court exceeded its authority in permitting an entirely new cause of action to be sent out in the complaint by way of an amendment." Mares v. Wormington (N. D.) 79 N. W. 441.

"According to the weight of authority, if there is an entire failure to state the cause of action in the original pleading, no amendment so as to state a cause of action is permissible." 31 Cyc. 407, 409, ¶¶ 2, 11.

"Every attorney enters into the service of his client subject to the rule that the client may dismiss or supersede him at will; that if he makes a contract for future services to his client it is necessarily subject to such rule, and made with the full knowledge that he may never perform such services, for the reason that his client may not keep him, and that in that event he will not be paid therefor, but will be entitled to compensation only for the services he has actually rendered." 113 App. Div. 810, 812, 99 N. Y. S. 1059, 204 Fed. 435; Martin v. Camp (N. Y.) 114 N. E. 46; see Lawler v. Dunn (Minn.) 176 N. W. 989.

"Where judgment creditor agreed to pay M. 25 per cent of the amount recovered on judgment, and M. employed other attorneys to institute proceedings for collection, but made no assignment of any interest in his contract, the other attorneys must look to M. for compensation for services performed under and by virtue of their employment by M." Millsap v. Sparks (Ariz.) 188 Pac. 135; Clearwater County State Bank v. Ricke, 163 N. W. 793; Ellis v. Frawley, 161 N. W. 364; Anker v. C. & Great Western Ry. Co. (Minn.) 167 N. W. 278; Zanker v. Chicago, G. W. R. Co. 174 N. W. 841.

"A judgment in a former suit between the same parties is not conclusive in a subsequent action involving different issues, where it does not appear that the identical question sought to be concluded was necessarily tried and determined in such prior litigation." Norton v. Emerson, 30 N. D. 258; Senneff v. Sharpe (Iowa) 174 N. W. 491.

"The circumstances to be considered in determining the compensation to be recovered are the amount and character of the services rendered; the labor, time and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibility imposed; the amount of money, or the value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the performance of the services; the professional character and standing of the attorney; the results secured." 6 C. J. § 331, p. 750; Trimble v. Kansas City R. Co. 201 Mo. 372, 100 S. W. 7.

"While it is true that the time taken in the performance of legal services should be taken into consideration, in fixing the value thereof, yet, it is of minor importance."

"It must be remembered, however, that the value of services per-

formed, by an attorney, cannot always be measured with the same degree of exactitude as can a bushel of wheat or a ton of coal. Education, experience, skill, judgment and knowledge are important factors." Kirchoff v. Bernstein (Or.) 181 Pac. 746.

"To ascertain the number of hours dedicated by an attorney to the business in hand, and then to make an allowance therefor, at so much per hour, is not an appropriate method for the determination of the value of the professional services rendered by him." Haussermann v. Rahmeyer, 12 Philippine, 350.

"Where the amount of attorney's fees is not fixed, to determine what the plaintiff is equitably entitled to recover, he may prove what is ordinarily charged in such cases." Stanton v. Ambray, 93 U. S. 548, 23 L. ed. 983; International Harvester Co. v. State Bank, 166 N. W. 507.

*W. F. Burnett* and *V. H. Crane,* for respondents.

"It has been held that, unless an action at law is expressly authorized by statute a court of equity is the only court having jurisdiction to enforce such liens." 6 C. J. 800, ¶ 416.

"The constitutional right to trial by jury does not extend to a proceeding to enforce an attorney's lien." Standige v. Chicago R. Co. 254 Ill. 524, 40 L.R.A.(N.S.) 528.

"Amendments of the pleadings after remand will not be permitted in a cause which was tried de novo on appeal." 4 C. J. 1227.

"A state court has jurisdiction of an action by an attorney to enforce his lien on the proceeds of a settlement made by the parties to an action brought by him as attorney in a court of the state, although before the settlement the action had been removed to a Federal court." 6 C. J. 801.

"It is quite clear however that such removal did not affect the plaintiff's lien upon the cause of action sought to be enforced as the lien existed by operation of law. The right to the lien did not depend in any way upon the decision or judgment of the United States circuit court; the lien attached upon the commencement of the action in the supreme court of the state of New York and upon the settlement attached to the fund in the hands of the defendant, which determined the cause of action and the relation between the plaintiff and defendant was not different from that in any case in which the defendant had in its hands a fund to which a lien had attached." Oishei v. Penn. R. Co. 117 App.

Div. 110–116, 102 N. Y. S. 368, 85 N. E. 1113; State ex rel. Miller v. People's State Bank, 22 N. D. 583, Ann. Cas. 1915D, 805; Ansel v. Kyger (Ind.) 110 N. W. 559; Duryea v. Edinger (Mich.) 134 N. W. 978; Wagner v. Freeny (Md.) 90 Atl. 774; Haight v. Freese, 165 Fed. 430; Grier v. Union Nat. L. Ins. Co. 217 Fed. 293; Finch Van Slyck v. La Suer Co-op. Co. (Minn.) 159 N. W. 826; 3 C. J. 625, ¶ 481; State v. State Bank (Nev.) 137 Pac. 400; Senneff v. Sharpe (Iowa) 174 N. W. 491; State ex rel. Dolman v. Dickey (Mo.) 231 S. W. 582; 6 C. J. 761, ¶ 353.

Jurisdiction of state courts. 6 C. J. 800; Laughlin v. Union P. R. Co. (Mo.) 196 S. W. 398.

"The decision of an appellate court is binding and conclusive upon the parties, as to the matter adjudged, in subsequent litigation between them in the same or any other court, and this is true even though the appellate court has since decided differently in other cases." 23 Cyc. 1221, d.

"An adjudication on any point within the issues presented by the case cannot be considered a dictum." 15 C. J. ¶ 344, p. 952.

"On the other hand, all the propositions assumed by the court to be within the case, and all questions presented and considered and deliberately decided by the court leading up to the final conclusion, are as effectively passed upon as the ultimate question solved, and the judgment is authority upon all points assumed to be within the issues which the record shows the court deliberately considered and decided in reaching it." 15 C. J. ¶¶ 329–335, p. 940; Moran v. Simpson, 173 N. W. 769.

"Inferior tribunals are found by the conclusions of the court of last resort, and cannot treat them as dicta on the theory that the questions determined were not properly raised by the record and were not necessary to the determination of the case." 15 C. J. ¶ 344, p. 953.

"It is the general rule that the decision of an appellate court is the law of the case in further proceedings in the cause in the trial court and in all subsequent stages of the action or proceeding. The rule is especially applicable where the appellate court has remanded the cause with specific directions as to the steps to be taken by the lower court; and such rule holds good regardless of whether the decision of the appellate court is right or wrong, it being said that is only where the decision is

deemed erroneous that the doctrine of 'the law of the case,' becomes at all important."

"The lower court cannot rehear or reconsider the matter decided by the appellate court, and it is the duty of the lower court to follow the decision of the appellate court, its action being deemed erroneous when at variance with the decision, and not erroneous in this respect when in accord therewith." 4 C. J. 1213, ¶ 3266, b.

"While the rule that the decision of an appellate court is the law of the case in subsequent proceedings in the same cause does not extend to matters not decided, even though the appellate court may have made some statements or remarks in respect thereto, it does apply to and comprehend all points presented 'and decided and necessarily involved, regardless of whether or not such points are specially noted in the opinion, syllabi, or mandate; and some courts go to the extent of holding that the decision of an appellate court is the law of the case, although a matter is not essential to the decision of the case on appeal, if it is important for the purpose of a new trial, and in that view passed on, it becomes the law of the case." 4 C. J. ¶ 3267 (m), p. 1216.

Amendment of the pleadings after remand will not be permitted in a cause which was tried de novo on appeal. 4 C. J. 1227, ¶ 3280, p. 1227.

Where, on remanding a cause, the appellate court has expressly or in effect given directions as to the issues to be tried, the new trial may and should be full and complete as to such restricted issues. 4 C. J. 1240, ¶ 3302, c.

Per Curiam. The decision of this case upon the former appeal is reported in 45 N. D. 251, 177 N. W. 107. The facts are briefly stated in the opinion of the majority, in the specially concurring opinion of Justice Robinson and with especial fullness in the dissenting opinion of Justice Christianson, in which Justice Birdzell concurred. We deem it unnecessary to restate all the facts here. The record on this appeal contains substantially the same testimony as appears in the record on the former appeal, except for some changes in the testimony of defendant Frantz, made, as he now claims, to correct statements made by him upon the former trial, which he now says were false and were, he asserts, made under the advice and solicitation of the counsel

who represented him at that time and in the personal injury action against the railroad company, defendant and appellant here. He now exonerates respondent Simon from any misconduct in connection with the making of the contract of employment.

The record on this appeal also shows that, in connection with the deposit and bond referred to on 45 N. D. 261, 262, 177 N. W. 107, Jacobsen & Murray furnished a bond to the First National Bank of Mott, in order to be able to check out the sum of $11,000, received in settlement of Frantz's claim against the Chicago, Milwaukee & St. Paul Railway Company, appellant herein. The record shows that they did in fact check this amount out of the bank and had done so prior to the proceedings had herein pursuant to the mandate on the former appeal.

The action was dismissed by the trial court as against Jacobsen & Murray and from the order of dismissal no appeal is taken by defendant Frantz.

The appellant railroad company contends that the trial court erred in holding that there was a fund in its possession to which a lien could attach, and denying its demand for a jury trial upon the general question of the employment of Mr. Simon by Frantz and his right to an attorney's lien; in overruling objections to testimony during the trial; in sustaining objections to offers of proof; in making findings 3, 4, 6, 7, 8, 8½, 9, 10, 11 and 12; and in ordering judgment for the plaintiff Simon and for the defendant Frantz against the appellant railway company.

Appellant strenuously contends that it is not in possession of the fund of $2,750; that same has been fully paid by it to Jacobsen & Murray; and that there being no fund, no lien could attach and that there is no liability against the appellant in this form of action.

It is true that the appellant paid the full amount of $11,000 to Jacobsen & Murray, the attorneys for Frantz, and took an indemnity bond from Frantz, in form indemnifying it against the claim of Mr. Simon up to $2,750, 25 per cent of the settlement. The money was, by agreement of the parties to the personal injury action, deposited in the First National Bank of Mott, which attempted to become a surety on this indemnity bond. In order to induce the bank to permit a withdrawal by check of the amount deposited, Jacobsen & Murray furnished the bank an indemnity bond and Jacobsen & Murray did, in fact, check out

all of this $11,000, paying all of it to Frantz, except the sum of $3,200, retained as counsel fees and being in fact somewhat less than the 33 1-3 per cent, stipulated in their agreement with Frantz. The appellant now contends that the indemnity bond, on which the bank is surety, is ultra vires and that the Jacobsen & Murray bond furnished no protection to it.

Upon this state of the record, can it be said that there is a fund in the custody of the railway company to which an attorney's lien may attach?

On May 18, 1917, Judge Amidon made an order in the Federal court of the district of North Dakota, dismissing the action started by Mr. Simon for J. P. Frantz against the appellant railway company. This order contained the following provision:

"And it is further ordered that 25 per cent of the amount agreed upon to be paid to the plaintiff in settlement of his claim for damages in this suit, be retained by the defendant, pending the further order of this court upon the claim of Charles Simon, Esq., for legal services rendered the plaintiff upon this claim for damages, determining the amount due said Charles Simon, under his contract with the plaintiff."

It is said in the majority opinion on the former appeal that "Frantz had the undoubted right to discharge the plaintiff (Simon) as his attorney, either with or without reason." This is correct. Frantz, however, had no right to discharge Mr. Simon summarily from the case, so as to affect detrimentally his right to compensation earned for services performed for the client and it was the duty of the Federal court to protect him in its order of dismissal. Kellogg v. Winchell, 51 App. D. C. 17, 16 A.L.R. 1159, 273 Fed. 745. This Judge Amidon did in his order of dismissal and the trial court correctly found this to be a fact.

Pursuant to this order, it was the duty of the defendant railway company to *retain* 25 per cent of the settlement in order to protect Mr. Simon on account of anything that might be due him for services rendered Frantz. Here there was in fact a fund to which respondent's lien could and did in time attach. Instead of retaining this amount, however, the appellant took a bond from Frantz, executed by his attorneys, Jacobsen & Murray, with a national bank as surety thereon, purporting to indemnify it against any claim for fees that Mr. Simon might

have, and thereupon paid the entire amount to Jacobsen & Murray, who, in turn, checked it out of the bank (the purported surety in the bond). Frantz testified, and the trial court found, that he had no knowledge of the transaction. Appellant now contends that this bond is void because national banks cannot go into the surety bonding business. Without discussing the validity of this bond, it is proper to say that this argument comes with poor grace from appellant at this time. Were Mr. Simon in the Federal court seeking to enforce his claim for services rendered, and if the railway company then and there interposed such a defense as we are here confronted with—that the fund has been paid out in fact and a void bond accepted—the answer of that court would doubtless be prompt and decisive. In neglecting to retain the fund, as ordered by the Federal court, the appellant, if not actually in contempt of the order above set out, would at least have no standing in equity on the proposition that there being no fund, no lien could attach. Appellant is clearly seeking to take advantage of its own misconduct in disobeying the order of the Federal court dismissing the action. It is elementary that this it cannot do in a court of equity. It can be in no better position here than if it were in the court that made the order it has disregarded. It was a stakeholder, under the order of dismissal and as a stakeholder we shall regard it in this case. If it chose to let the fund pass out of its possession and elected to accept a bond for its own protection, the appellant did so at its peril and the consequences cannot in any manner, directly or indirectly, be visited upon the respondent. We, therefore, hold that there was a fund, in contemplation of law, in the possession of the appellant to which a lien could and did in fact attach for the value of the services of respondent to Frantz.

Is appellant entitled to a jury trial?

When this case was here on the former appeal, this court sent it back for further proceedings and ordered additional parties to be brought in. On the theory that a "complete determination of the controversy cannot be had without the presence of other parties," the court had this power, under § 7412, Comp. Laws, 1913. "This provision is a mere adoption of a well-known equitable rule, and relates primarily to equitable actions. . . ." 31 Cyc. 471. In an action at law, the New York courts have held, the plaintiff cannot, under this statutory provision, be required to bring in other parties whom he has not elected to

sue. Chapman v. Forbes, 123 N. Y. 532, 26 N. E. 3. This court arrived at the same conclusion in Bolton v. Donovan, 9 N. D. 575, 84 N. W. 357. This view was also taken by the United States circuit court for the district of South Carolina, in Springfield F. & M. Ins. Co. v. Richmond & D. R. Co. 48 Fed. 360, construing a statute of South Carolina substantially the same as § 7412, Comp. Laws, 1913.

It must therefore be clear that on the former appeal this court necessarily determined the identical question here raised by appellant and held that that was an action in equity and answered the contention, then, as well as now, strenuously made, that defendant was entitled to a jury trial, adversely to appellant. We, therefore, hold that the court below did not err in denying appellant's demand for a jury trial. This court, in the former appeal, impressed upon the further proceedings ordered in its decision, notwithstanding appellant's claim that it was entitled to a jury trial, an equitable character and the trial court proceeded correctly in accordance with the mandate.

Are the findings of facts, specified as erroneous, supported by competent evidence?

In finding number three, to which exception is taken, the court finds that Frantz employed Simon. This was regarded as an established fact on the former appeal and the contract is in evidence here. This finding is established by competent documentary proof, as well as by oral testimony. Finding four relates to the commencement of an action by Mr. Simon for Frantz against the railroad company and the service on it of notice of claim of lien. The correctness of this finding is established by undisputed record evidence. In the sixth finding the court finds that Jacobson & Murray procured the defendant John P. Frantz to discharge the plaintiff (Simon) as his attorney, on the 31st day of December, 1916. It would be unprofitable to set out in detail the conduct of defendant Murray in this connection. It is sufficient to say that the correspondence between Jacobsen & Murray and J. P. Frantz, at that time—some written in the German language by Murray to "Lieber Freund" Frantz, though the latter understood and wrote letters in English—together with the testimony of Frantz himself, conclusively show that, as hinted by Federal Judge Amidon, Frantz was much "wrought upon" by some one and in fact discharged Simon because of such influence. Frantz wrote Simon from Mobridge hospital very

friendly letters with reference to the activities of Mr. Simon in commencing suit for him in his behalf generally. Then, almost over night, and without any reason apparent in the record, other than the influence of Jacobsen & Murray, Frantz changed and sent Simon "rather insulting letters," as said by Justice Robinson, 45 N. D. p. 258, 177 N. W. 107, on the suggestion of and dictated by Mr. Murray. This finding is amply supported in the record. Findings seven and eight refer to the dismissal of the action started by Simon, that such dismissal was conditioned upon the retention of $2,750 to protect Simon under his contract and the settlement of $11,000 subject to Simon's lien for services rendered. These findings are supported by documentary evidence and are indisputably correct.

Finding number eight states that the defendant railway company and the firm of Jacobsen & Murray entered into an agreement, without the knowledge of Frantz, whereby the sum agreed upon as settlement in the personal injury suit was paid to Jacobsen & Murray, and that, in order to get control of this fund, this firm executed a bond, as attorneys for Frantz, with the First National Bank of Mott as surety, to indemnify the railway company, and that such arrangement was a fraud on the defendant Frantz. The existence of such an undertaking is shown to have been established on the former trial and is referred to in the majority opinion at p. 255 of 45 N. D., 177 N. W. 107. The evidence on this appeal supports the finding that such undertaking was entered into and the finding is correct. Frantz's name was signed to this undertaking by Jacobsen & Murray and without his knowledge or express consent. Neither does it appear that he was advised that by conniving at the disbursement of the fund ordered by Judge Amidon to be retained, he was, in effect, a party to a transaction in violation of an order made for the protection of the rights of Mr. Simon, an officer of the Federal court.

The ninth finding has reference to the value of the services performed by the plaintiff Simon, found by the court to be the sum of $1,250. This is amply supported by evidence and the trial court knew the facts and circumstances and was competent to form a judgment upon the value of the services in that community.

The tenth finding is as follows: "That the defendant John P. Frantz is the owner of the remainder of the said fund of $2,750 as payment of

the claim of the plaintiff Charles Simon." This finding cannot be sustained. The record shows that Frantz entered into a contract with Jacobsen & Murray to conduct litigation for him on account of his injuries and that their compensation thereunder was to be 33 1-3 per cent. They procured a settlement of $11,000 which at the time was satisfactory to him. He signed a receipt and release in full. The railway company paid the amount of $11,000 to Jacobsen & Murray, his attorneys in the transaction, and they in turn have, the record shows, paid him all of this amount except the sum of $3,200, which is somewhat less than 33 1-3 per cent, which was the percentage they were to receive according to the contract of employment. No judgment against the railway company and in favor of Frantz could properly be entered by the court below. Whatever legal grievance the defendant Frantz may have, arising out of these transactions, is not against the appellant herein.

The eleventh finding is to the effect that Jacobsen & Murray declared in open court that they had no interest in the fund of $2,750. On this point the record is as follows:

Mr. Burnett: I am seeking to get at your interest in the $2,700, if you have any, which the railroad company should have retained under the lien, and must have retained under the order of the court.

Mr. Murray: You are seeking for no personal judgment against Jacobson & Murray?

Mr. Burnett: Not unless you have some interest in the fund, not unless you have the money that belongs in the fund, but if you have the money we would like to have you pay something.

Mr. Murray: I will say to the counsel for the plaintiff that the defendants, Jacobsen & Murray, now state in open court that they have no interest in any supposed fund; that they have been compensated in full long prior to the commencement of this action by John P. Frantz for services rendered him, and upon that statement ask that the action be dismissed as to them, the firm of Jacobson & Murray, on the statement that we have no interest in any purported fund. (P. 756).

We think that the finding is clearly supported by the record.

We have carefully examined the record and read the transcript and the testimony and we conclude that the findings of the trial court as

to the facts of this case, necessary to establish a cause of action in favor of the plaintiff, Mr. Simon, and against the defendant railway company, are amply supported by competent evidence and we approve the same. This disposes of appellant's following specifications of errors: Specifications 5, 6, and 7. We have disposed of specification 1, alleging error for refusing a jury trial, and specification 8 referring to the granting of judgment in favor of defendant Frantz and against the appellant railway company, has been disposed of in favor of the appellant.

We have read the record and find, with reference to specifications 2 and 3, that no prejudicial error was committed in the admission or exclusion of evidence. We do not think any material evidence was excluded. Sess. Laws, 1919, chap. 8. The court was extremely liberal to both sides and permitted the introduction of much evidence that was irrelevant and immaterial and the offers of proof that were excluded, in the view we take of this case on this appeal were wholly irrelevant and immaterial. In any event, the case is tried anew in this court and there is sufficient competent evidence in the record to require a judgment for plaintiff. Nichols & S. Co. v. Stangler, 7 N. D. 102, 72 N. W. 1089.

With reference to specification 4, it was not error to deny appellant's motion for a dismissal of the action at the close of the plaintiff's case.

Appellant railway company has filed a supplemental brief in which it contends that the bond given by the First National Bank of Mott to indemnify it for turning the money over to Jacobsen & Murray is ultra vires; that it furnishes no protection to appellant whatever; that because the bond is ultra vires the sureties on the bond are not liable and that the bond of Jacobsen & Murray to the bank is conditioned upon payment by the bank; and that since the bank can never be compelled to pay under the bond, because it is ultra vires, therefore Jacobsen & Murray can never be compelled to pay or indemnify anyone. The Jacobsen & Murray bond is to indemnify only the First National Bank and not other parties who signed with the bank. We do not understand the materiality of this contention, conceding the legal propositions to be sound. The bonds were prepared under the direction of Jacobsen & Murray and were accepted by the appellant railway company as satisfactory. If the bonds do not protect the appellant, it is its own fault

and not the fault of Mr. Simon or of Mr. Frantz. The order of the Federal court was that a *fund* should be *retained* and did not contemplate a surety bond. The inference is justifiable from the record before us that counsel who prepared these bonds, knew at the time that they were of questionable legality and that, as to the First National Bank, the bond was ultra vires. The money having been paid, the fund being gone, appellant is in no position now to take advantage of its own wrong, or profit by its own negligence.

Was the value of the services proved?

On the former appeal this court held that Mr. Simon was entitled to recover, either on the quantum meruit theory, or the actual damages sustained by the breach of the contract. Upon this point, the trial court found that the services rendered by Mr. Simon, to the defendant John P. Frantz, under the contract, found by the court to have been entered into with said Frantz, but broken by Frantz upon the procurement of defendants Jacobsen & Murray, were of the reasonable value of $1,250 and that Mr. Simon was entitled to judgment for this amount against the defendant railway company, with interest from July 1, 1917, at the legal rate of 6 per cent. We have carefully examined the record and we find that the evidence amply sustains the findings made as to the making of the contract, the breach thereof and the value of the services rendered thereunder, and we have no hesitancy in approving them. The record shows in considerable detail the nature and amount of work done by Mr. Simon. Upon the question of the proper fee or charges, the "courts are also qualified to form an independent judgment . . . and it is their duty to do so." Re Freund, 171 Ill. App. 570, 572; Metheny v. Bohn, 164 Ill. 495, 45 N. E. 1011; 6 C. J. 761, 762. In any view of the evidence, the finding as to value and the proper charge is correct and we decline to disturb it.

A stipulation was entered into and filed before the trial court decided this case, to which the attorney for the respondent, Simon, and the attorney for the respondent, Frantz, were parties. It was there agreed that the services of Simon were reasonably worth $2,750, and that judgment for this amount might be rendered. The court found, however, that the services were reasonably worth $1,250 and we see no reason for disturbing this finding.

Appellant further contends: "The complaint alleges an express con-

tract and full performance; the evidence shows a discharge of the plaintiff and nonperformance of his contract. Over the objections of the defendant, plaintiff introduced testimony tending to establish by quantum meruit. There is a fatal variance between the proof and the proceedings."

In the opinion on the first appeal this court say, at page 257 of 45 N. D., at page 108 of 177 N. W., after setting out the employment and discharge of Mr. Simon: "In such event the plaintiff, as an attorney, is entitled to receive payment for services rendered in behalf of his client, measured either by quantum meruit, or by damages actually sustained through breach of the contract." The court then ordered the case remanded for further proceedings "consonant with this opinion."

One of the purposes of the remand order was to ascertain the compensation to which Mr. Simon was entitled by virtue of his employment by the defendant Frantz. As quoted above, the court said he was entitled to recovery upon quantum meruit or the actual damages sustained through breach of the contract. The issue was thus made by this court and there was, in reality, only one question before the trial court, pursuant to this mandate, namely, the compensation to which Mr. Simon was entitled. It was also provided, as heretofore stated, that additional parties be brought in so that the rights of all concerned might be litigated and determined. The respondent, however, was not interested in any controversy that might exist or arise between the defendant Frantz and his attorneys, on the one hand, and between Frantz and the appellant railway company, growing out of the settlement, on the other.

When the case was remanded to the district court, the district judge made an order, intending to comply with the mandate, directing the service of summons and complaint upon the new parties required to be brought in. While this may not have been necessary, it was, at least not improper. The parties thus served were charged with knowledge of the decision of the supreme court in that case and of the law announced in that decision. They, therefore, must be presumed to have known and understood the purpose of serving the summons and complaint on them and that purpose was to bring them in as parties to determine the rights of all concerned under the mandate of this court, and particularly to ascertain the compensation to which Mr. Simon was entitled, either upon quantum meruit or as actual damages for breach of the contract of

employment. This court, therefore, made the issue and in effect directed the trial court, in so far as Mr. Simon was concerned, to ascertain but one thing, and that was the amount of his compensation. Of this all the parties, defendants and appellants herein, had actual knowledge and could not be misled by the character of the pleadings in the first action which are in all substantial respects identical with the new complaint that was served, pursuant to the order of the district court when the mandate went down. It is clear, and we so hold, that the rule relied upon by counsel for the appellant, to the effect that there can be no recovery upon the theory of quantum meruit when the pleading alleges an express contract and the performance thereof, has no application to the situation here presented. On this point, therefore, the contention of appellant is without merit.

The appellant also contends that the contract of the respondent Simon was "champertous and was procured by fraud," and, therefore, respondent is not entitled to recover the value of his services. It is the same kind of a contract but not so onerous in its terms, which the attorneys for the appellant, Jacobsen & Murray, had with Frantz, under which they still retain nearly 33 1-3 per cent of the settlement, and entered into with him after they induced him to discharge Mr. Simon. We have carefully examined the record and we find that it clearly establishes that the contract with Mr. Simon, respondent herein, was entered into in good faith and before there was any contract with Jacobsen & Murray for the prosecution of the claim of J. P. Frantz arising out of his injuries. The undisputed evidence shows that the defendant Frantz sent for Mr. Simon and asked him to take this case for him and Mr. Frantz himself so testifies.

The judgment of the trial court in favor of the respondent Simon and against the appellant railway company is affirmed, while the judgment in favor of the defendant Frantz and against the appellant railway company is reversed and set aside. The respondent Simon to recover costs on this appeal. The railway company, appellant, and the respondent, Frantz, each to pay own costs of this appeal.

BRONSON, Ch. J., and BIRDZELL, JOHNSON, and CHRISTIANSON, JJ., and COFFEY, Dist. J., concur.

Mr. Justice Nuessle, being disqualified, did not participate; Honorable J. A. Coffey, Judge of the Fourth Judicial District, sitting in his stead.